No. 26,335.

THE FARMERS STATE BANK OF CUNNINGHAM, and E. C. CROW, Receiver, *Appellees,* v. RALPH ST. AUBYN and W. B. ROUSE, *Appellants.*

SYLLABUS BY THE COURT.

1. MORTGAGES—*Equitable Mortgage—Transactions Constituting.* Where the bank commissioner, while in charge of an insolvent bank, made an oral agreement with the defendant, who had been its assistant cashier and who was one of four coöwners of the bank building, that the bank commissioner might hold possession of the building as security for the defendant's liabilities to the bank (the other coöwners not objecting), such oral agreement constituted a lien on defendant's interest in the property in the nature of an equitable mortgage which could properly be foreclosed to satisfy the defendant's liabilities.

2. SAME—*Liens and Priorities—Bona Fide Purchaser—Possession as Notice.* Where a bank had been the tenant of a bank building at a monthly rental, and the bank became insolvent and the bank commissioner took charge of it under authority of statute, the insolvency of the bank and the possession of the bank commissioner constituted in law and in fact such an open, notorious and visible change of possession of the premises from the prior tenancy of the bank as to charge a purchaser of the bank debtor's interest in the bank building with notice and to put him on inquiry; and an oral agreement between the debtor and the bank commissioner that the latter might hold the building as security for the debtor's liabilities to the bank, which agreement was prior in time to the debtor's deed to the purchaser, was properly given precedence in right over the conveyance to the purchaser.

3. SAME—*Equitable Mortgage—Rights as Against Subsequent Purchaser.* A bank failed and the bank commissioner took charge. The assistant cashier owned a one-fourth interest in the bank building, which the bank had been occupying at a monthly rental, and the bank was several months behind in payment of the rent. The assistant cashier owed the bank on an overdraft,

---

Mortgages, 27 Cyc. p. 977 n. 93; 19 R. C. L. 273. Receivers, 34 Cyc. p. 261 n. 10. Vendor and Purchaser, 39 Cyc. pp. 1750 n. 8, 1771 n. 27.

Farmers State Bank v. St. Aubyn.

on a note, and on his double liability as a stockholder. He orally agreed that his overdraft might be satisfied from the rent then accrued, and that the bank commissioner might hold the building as security for his other liabilities, but later in breach of that agreement he conveyed his interest in the property to his father-in-law. *Held,* under the circumstances, that the bank commissioner acquired a lien in favor of the bank in the nature of an equitable mortgage which was prior in time and in right to that of the debtor's grantee.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed January 9, 1926. Affirmed.

*H. E. Walter,* of Kingman, for the appellants.

*Clark A. Wallace,* of Kingman, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action grew out of the failure of the Farmers State Bank of Cunningham. The defendant St. Aubyn had been its assistant cashier, and shortly before it closed he borrowed from the bank $950 on his promissory note and overdrew his account to the extent of $52.50. St. Aubyn held five shares of stock, and was subject to the consequent double liability of $500 thereon.

While the bank was operating it occupied a building owned by four tenants in common, one of whom was St. Aubyn. The bank paid rent at the rate of $40 per month. When the bank failed and the bank commissioner took charge, that officer had a conversation with St. Aubyn touching his overdraft and note and his double liability. St. Aubyn said he had no money and no property except his one-fourth interest in the bank building, which he asserted was worth $2,000. He also said: "You are already in possession of the building, and I have some rents due me, about sixty dollars, that hasn't been paid, and you may use that as an offset against my overdraft and hold the building as security for the rest of my obligations." This conversation and agreement between St. Aubyn and the bank commissioner occurred about August 1, 1923. On September 24, St. Aubyn executed a deed to his father-in-law, W. B. Rouse, his codefendant herein, conveying his interest in the bank building. The nominal consideration therefor was $1,750, and Rouse testified that the actual consideration was the cancellation of an old note held by him against St. Aubyn for $450 and interest less a credit of $45 thereon and a check issued by Rouse to St. Aubyn for $1,265.50 which had been cashed by St. Aubyn. When the bank

commissioner learned of this conveyance he took St. Aubyn to task for breach of his oral agreement. St. Aubyn answered that he had merely executed the deed "as a matter of self-preservation," and further said: "I didn't get any money out of it, but I just gave this deed to my father-in-law so in case I needed any money I could get it."

Rouse, the grantee of St. Aubyn, took no steps to disturb the bank commissioner's possession of the building nor the later possession of the receiver. After the oral agreement was made between St. Aubyn and the bank commissioner, no rent was paid on behalf of the failed bank except an entry of satisfaction of St. Aubyn's overdraft pursuant to that agreement. On October 24, 1923, a new bank was organized and the bank commissioner rented the building to it. The new bank went into possession and thenceforward paid rent to the receiver of the old bank. The receiver also reserved official quarters for himself in the building and is still in possession.

On January 7, 1924, this action was begun against St. Aubyn and Rouse by the Farmers State Bank of Cunningham and its receiver to recover on St. Aubyn's note and on his double liability. Rouse was impleaded. When plaintiffs' pleadings were first formulated St. Aubyn's interest in the property was subjected to attachment on a publication service, he being then in California; but eventually the action took the form of an ordinary one for the recovery of money, setting up the oral agreement between St. Aubyn and the bank commissioner as an equitable mortgage and plaintiffs' possession thereunder, and alleging that the deed from St. Aubyn to Rouse was without consideration and had been given and received pursuant to a conspiracy between grantor and grantee for the purpose of defrauding the bank and its creditors and stockholders, and praying that the bank's equitable lien be foreclosed.

Defendant Rouse filed a general denial and set up his deed, and later filed a pleading admitting the validity of the bank's claim on St. Aubyn's double liability, and offered to confess judgment for that amount and interest, and tendered and paid that sum ($505.67) into court. Pleading still further, Rouse denied generally and specially that he had entered into any agreement or conspiracy with St. Aubyn to defraud the bank or any of its officers for any claim whatsoever, and denied that any fraud inhered in the transaction whereby he acquired St. Aubyn's title, and denied all knowledge

of St. Aubyn's prior oral agreement with the bank commissioner that his interest in the property should be held as security for the satisfaction of his liabilities to the bank.

Trial by the court; evidence heard at length; informal findings on all issues in favor of plaintiffs; special finding that plaintiffs were lienholders in possession and entitled to foreclosure; judgment accordingly.

Defendants appeal, contending that their demurrer to plaintiffs' evidence should have been sustained. They argue that any oral agreement between St. Aubyn and the bank commissioner, if made, was void under that provision of the statute of frauds which declares that no action shall be brought to charge a party upon any contract concerning an interest in lands—which they insist would include a mortgagee's interest—unless the agreement reciting the contract terms were in writing and signed by the party to be charged thereby or by his duly authorized agent. But just as potent as that statute (R. S. 33-101 to 33-110) and the rules of law developed therefrom, are the exceptions included in the statute itself as well as those deduced from it by logical and legitimate judicial interpretation. (*Witt v. Boothe,* 98 Kan. 554, 158 Pac. 851.) The second section of the statute (R. S. 33-102) declares that every conveyance of lands made with intent to hinder creditors of their just and lawful debts shall be void. While the trial court did not in express terms find that the conveyance from St. Aubyn to his father-in-law was made with intent to hinder the bank in the recovery of what was due to it from St. Aubyn, yet that issue was raised by the pleadings and evidence was adduced thereon, and the general findings in plaintiff's favor would be so construed if that necessity arose to sustain the judgment. (*Drinkwater v. Sauble,* 46 Kan. 170, syl. ¶ 1, 26 Pac. 433; *State v. Wood,* 49 Kan. 711, 716, 31 Pac. 786; *Harris v. Morrison,* 100 Kan. 157, syl. ¶ 7, 163 Pac. 1062.) But the judgment does not rest alone nor necessarily at all upon evidence and findings that the conveyance from St. Aubyn to Rouse was made to hinder and delay the bank of its just claim against St. Aubyn. By virtue of the oral agreement between St. Aubyn and the bank commissioner, St. Aubyn's interest in the bank building was pledged as security for St. Aubyn's debt. And such right of possession as St. Aubyn could confer pursuant to that pledge was bestowed upon the bank commissioner. It is immaterial

that the record does not squarely show that St. Aubyn's cotenants concurred in that agreement. They may be in complete accord with the course pursued by the bank commissioner to protect the bank's interests. The record does not show that they have objected. It does show that after St. Aubyn's agreement with the bank commissioner, no further rent was paid to any landlord; and the record does show that when the new bank was organized it was let into possession by the bank commissioner and receiver of the failed bank and that the new bank paid rent to the receiver. The record also shows that when the receiver let the new bank into possession he reserved quarters for himself and for the proper discharge of his duties as receiver.

When the bank failed there was no presumption that the prior contract of tenancy at $40 per month for the use of the bank building continued in effect. It behooved Rouse when he took a conveyance from St. Aubyn, assuming that transaction to have been in good faith, to inquire as to the nature of the rights of the parties in possession of the bank building. He was charged with notice—not of the exact nature of their occupancy—but with the fact that they must have had some sort of tenure, and whatever title he got from St. Aubyn was subject to the rights of the parties in possession. Possession being held in behalf of the bank as creditor, with a lien in the nature of an equitable mortgage based upon St. Aubyn's oral agreement with the bank commissioner of the date of August 1, such possession and equitable lien were valid (*Charpie v. Stout,* 88 Kan. 318, 128 Pac. 396), and were prior in time and in right to that acquired by Rouse through his deed of September 24. Liens in the nature of equitable mortgages based upon oral agreements are not at all uncommon, and they are upheld and enforced where equity and good conscience so require. (*Foster v. Bank,* 71 Kan. 158, 80 Pac. 49; *Bisby v. Quinby,* 92 Kan. 86, 140 Pac. 635; *Fitzgerald v. Fitzgerald,* 97 Kan. 408, 155 Pac. 791; 19 R. C. L. 275, 326-328.)

Counsel for defendants cite cases of familiar law to the effect that as against an innocent grantee of a written conveyance one who claims an interest in land by virtue of a prior oral contract must have taken possession of the property under such oral contract; that a mere continued possession taken under some other contract made prior to the oral one will not carry the case out of the statute

of frauds; and that a continuance of possession is not enough to overcome the statute where the oral contract relied on was not followed by some actual and visible change in the situation from what the tenure had been prior to the making of the oral contract. There is a lot of good law to that effect, and we have no disposition to disregard it. (*Baldwin v. Squier,* 31 Kan. 283, 1 Pac. 591; *Skinner v. Davis,* 104 Kan. 467, 179 Pac. 359; note to *Roberts v. Templeton,* [Ore.] 3 L. R. A., n. s., 790, *et seq.*) But we think the change occasioned by the closing of the bank and its being taken in charge by the bank commissioner was not only in law but in fact such an open, notorious and visible change of possession as to charge everybody concerned with notice; and especially was it notice of change of possession and of right to possession to Rouse who had been interested in the bank and who, on July 2, 1923, had obtained a considerable amount of the bank's commercial paper in exchange for a certificate of deposit for $3,000 which with rare good fortune he thereby got rid of shortly before the bank failed. Without attaching any other significance to that transaction, it tended to show that Rouse had early notice of an impending change of affairs likely to affect all the bank's concerns, including that of its tenancy of the bank building.

Moreover, when the bank commissioner takes charge of an insolvent bank, his legal relation to it is analogous to that of a receiver; and when a receiver takes charge of a business institution there is no presumption that he occupies the business premises in mere continuation of the tenancy under which they were occupied prior to the insolvency. He occupies them by operation of law or by some lawful order of a court of equity. The property is in *custodia legis*. Indeed, the receiver must elect whether he will accept or repudiate the prior contract of tenancy, and do so within a reasonable time. (*United States Trust Co. v. Wabash Railway,* 150 U. S. 287, 37 L. Ed. 1085, and Rose's notes thereto, pages 642 *et seq.;* 34 Cyc. 261.)

The record contains no prejudicial error and the judgment is affirmed.