No. 28,511.

THE REPUBLIC MUTUAL FIRE INSURANCE COMPANY, *Appellant,*
v. FRANK A. JOHNSON, *Appellee.*

(278 Pac. 48.)

324

 Opinion filed
June 8, 1929. 

*W. D. Vance* and *R. E. McTaggart,* both of Belleville, for the appellant; *S. H. Allen, Otis S. Allen* and *George S. Allen,* all of Topeka, of counsel.

*Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to foreclose a mortgage on real estate, and a cross action to recover on a policy of fire insurance, the details of which will require to be stated at some length.

The defendant, Frank A. Johnson, was the owner of several valuable farms in Republic county. Three of these farms were separately mortgaged to the Mutual Benefit Life Insurance Company for the amounts of $9,500, $8,000 and $12,000, respectively. These mortgage loans had been negotiated by a firm of loan brokers in St. Joseph, Mo., named Bartlett Brothers; and they and their subagents and business associates in the farm-loan business conducted a corporation called the Lincoln Land Company which advanced moneys to pay interest and taxes for delinquent borrowers so as to maintain the prestige of the mortgage loans negotiated and marketed by Bartlett Brothers.

On one of these farms (NW¼, sec. 4, twp. 4, range 5 west), owned by Johnson and mortgaged as above for $9,500, was a farmhouse which was insured by the Republic Mutual Fire Insurance Company, plaintiff, for $3,000, which policy was payable to the Mutual Benefit Life Insurance Company, mortgagee, as its interest might appear. By agreement, also, to which the mortgagor, mortgagee and insurer were parties, the insurer had the right to purchase the mortgage loan and take over all the rights of the mortgagee. By its terms the policy provided that if the insured parted with his title the insurance contract would thereby become terminated and without effect, unless the insurer gave its consent thereto.

In 1923, while Johnson's three farms were covered with the mortgages mentioned above, he defaulted in his payments of interest and taxes. The Lincoln Land Company took care of these, and on

May 9, 1924, its representative called on Johnson to adjust or settle these advances. To that end Johnson executed deeds to two of his mortgaged farms in favor of the Lincoln Land Company, and in return he accepted a lease of them whereby he agreed to farm them under directions from the Lincoln Land Company and to deliver to it as rent one-half of the wheat and hay and two-fifths of the corn raised thereon. The lease also provided that subject to their incumbrances Johnson could repurchase the two farms for $4,548.47 plus any additional taxes the Lincoln Land Company might pay, *and it reserved to itself the privilege of paying whatever taxes might thereafter accrue.* At the same time Johnson executed a promissory note in favor of the Lincoln Land Company for $2,371.49 and gave it a chattel mortgage on his interest "as tenant" in the crops to be grown on the two farms he had just deeded to the Lincoln Land Company.

While this status of affairs existed between the Lincoln Land Company and Johnson the house on the first farm described above was destroyed by fire. The plaintiff insurer thereupon exercised its option to buy the interest of the mortgagee, and having had the Johnson note for $9,500 and related mortgage assigned to it, this action was begun to recover on the note and to foreclose the mortgage. Johnson answered admitting the indebtedness but setting up a cross action upon the insurance policy for the destruction of the house and praying for a recovery of $3,000 thereon to be credited upon his $9,500 indebtedness.

For answer to defendant's cross petition plaintiff pleaded that by the deeds executed by Johnson in favor of the Lincoln Land Company on May 9, 1924, he had sold and conveyed the farm on which the house had burned and had ceased to be its owner, and the policy of insurance had been thereby terminated and defendant had no interest therein.

The foregoing issuable facts and others of less significance were developed in appropriate pleadings. The cause was tried by the court, which made findings of fact, one of which was that the deed conveying the farm on which the house afterwards burned was in fact a mortgage to secure the amount advanced by the Lincoln Land Company on Johnson's defaulted interest and taxes, but that the indebtedness of Johnson pertaining thereto had been fully paid, although the Lincoln Land Company did not in fact reconvey the title to Johnson until after the house burned.

Judgment in favor of the plaintiff was entered for the amount of the mortgage and its incidents, and judgment in favor of defendant was entered for the amount of the insurance policy, which latter amount was ordered to be credited as a payment upon the amount due on the mortgage indebtedness. An attorney's fee was also allowed defendant on his cross action and judgment on the fire insurance policy.

Plaintiff appeals, urging various errors which chiefly center upon the question of what effect the transactions of Johnson and the Lincoln Land Company had upon the policy of fire insurance. Plaintiff contends that by the deed of March 9, 1924, Johnson ceased to be the owner of the farm, and thereafter the fire insurance policy was at an end. The pertinent provision of the policy reads:

"ARTICLE 36. If the insured shall cease to be the owner or dispose of the property covered by his policy, . . . the insurance shall immediately terminate. . . ."

At the time this insurance policy was written the mere act of incumbering the property did not vitiate the policy, so the first question we have to determine is whether the transactions between the Lincoln Land Company and Johnson on May 9, 1924, were fairly susceptible of the interpretation placed upon them by the trial court, or whether they were no more than what they purported to be—an outright and unqualified conveyance of all of Johnson's title and interest to the Lincoln Land Company with a mere option to repurchase upon terms dictated by the new owner— or whether they were in legal effect and intention an equitable mortgage to secure the repayment of the sums advanced by the Lincoln Land Company on account of interest and taxes due from Johnson to the original mortgagee.

In the determination of this question it is plaintiff's contention that the only evidence to be considered is the text of the deeds from Johnson to the Lincoln Land Company and of the farm lease and option granted to Johnson. Of course, if that contention were correct, their ostensible tenor would prevail over their actual character. Such, however, is not the law. There is no principle of equity better settled, or better supported in justice and good conscience, than the doctrine that a deed purporting to convey all title and interest from a grantor to a grantee may in fact be no more than an equitable mortgage (*McNamara v. Culver*, 22 Kan. 661; *Overstreet v. Baxter*, 30 Kan. 55, 1 Pac. 825; *Timma v. Timma*, 72

Kan. 73, 82 Pac. 481; *Moody v. Stubbs*, 94 Kan. 250, 146 Pac. 346; *Gilmore v. Hoskinson*, 98 Kan. 86, 157 Pac. 426; *Kolar v. Eckhardt*, 119 Kan. 518, 240 Pac. 947; *Rusco v. DeGood*, 127 Kan. 708, 275 Pac. 201); and between the parties thereto and those in no better position than the contracting parties the facts pertaining to the execution of such an instrument may be shown by any competent evidence, parol or otherwise. (*Bank v. Kackley*, 88 Kan. 70, syl. ¶ 2, 127 Pac. 539; *Dyer v. Johnson*, 109 Kan. 338, 198 Pac. 944; *Bank v. Bank*, 111 Kan. 682, 208 Pac. 636; *Clark v. Howe*, 121 Kan. 204, 247 Pac. 113.) See, also, *Farmers State Bank v. St. Aubyn*, 120 Kan. 66, 70, 242 Pac. 466.

In the early case of *Moore v. Wade*, 8 Kan. 380, 387, it was said:

"This deed was absolute upon its face, but as it was taken only as a security it was, in effect, a mortgage. This principle has been so long and so well settled by courts of equity that we do not think it is necessary to refer to authorities to sustain it. But as·no written defeasance was executed between the parties, it is claimed that no parol understanding, intention, or agreement can be shown to create a parol defeasance. Now, while it may not be sufficient in an action at law to show by parol evidence that a deed, absolute upon its face, was understood or intended or agreed to be a mortgage, or was understood or intended or agreed to be defeasible, yet it has always been sufficient in a court of equity to show a *state of facts* outside of the deed which should render the deed a mortgage, or would render it defeasible."

Now, it cannot be claimed for the plaintiff insurance company in respect to the transactions between Johnson and the Lincoln Land Company that it is in a stronger position than the Lincoln Land Company itself. (22 C. J. 1292-1294.) And while that company went through the formulary operation of taking deeds to two of Johnson's farms and leasing them back to him, and in such lease he gave it a landlord's unusual privilege of telling him how to farm those lands, and promised to pay it a share of the crops as rent, yet the Lincoln Land Company paid no attention to these ostensible rights and privileges as landlord; it did not concern itself about the farming of the lands, and neither received nor demanded a landlord's share of the crops. On the contrary, it kept accounts with Johnson until he had paid the ostensibly optional amount of $4,-548.47; and the officer of the Lincoln Land Company who conducted the negotiations with Johnson explained how that amount was computed. That sum was thus fixed to include the several amounts of interest and taxes the Lincoln Land Company had advanced for Johnson, plus the interest which would fall due at the next

interest-paying period, plus an estimate of the expenses which the agent would incur in attending to the details of the transaction, viz.:

| | |
|---|---|
| NW¼ of 4-4-5 (property insured).................... | $1,082.50 |
| SW¼ of 33-3-5 ..................................... | 1,094.48 |
| NE¼ of 31 and NW¼ of 32, all in 3-5............... | 2,371.49 |
| Total......................................... | $4,548.47 |

Furthermore, of this so-called option it was shown too clearly for any cavil that a substantial part of it, $2,371.49, inevitably had to be paid by Johnson, which proved quite conclusively that to the extent of that amount, at least, the sum denominated an option was in fact a debt. (*Winston v. Burnell*, 44 Kan. 367, 24 Pac. 477.) In the so-called lease, also, the plaintiff as "lessor" reserved the "privilege of paying any such taxes coming due prior to the expiration of this lease"—quite a superfluous reservation if the conveyance from Johnson to the company and the lease from the company to Johnson were indeed what they purported to be.

But plaintiff advances a plausible argument that the negotiations between Johnson and the agent of the Lincoln Land Company on May 9, 1924, culminated in two wholly unrelated transactions—one which pertained to the deeds to two of Johnson's farms, and another unrelated transaction which dealt with the advancements made by the company of interest and taxes on the half section mortgaged for $12,000. As to this latter transaction there was a loan to Johnson which had to be repaid, hence the note for $2,371.49 and the chattel mortgage to secure its payment. Apparently the trial court had no difficulty in seeing through the plausibility of that argument, and neither do we. As already said, whatever the tenor of instruments concerning the ostensible transfer of title, courts of equity are authorized to delve through forms to the substance of things, and the factors which made up the "optional" payment by which Johnson could "repurchase" the farms were potent evidence that the entire "option" was a debt which Johnson was expected to repay. If further evidence of the actuality were requisite, it was fairly supplied by the fact that the farm on which the house burned was worth $20,000, yet he deeded it to the company without receiving the consideration of one dime therefor. We have not failed to note that the admissibility of this and other highly probative matters of evidence was and still is stoutly disputed, but their competency is easily determined by the application of the elementary test: Did the facts or circumstances offered in evi-

dence tend to throw light upon the question the court had to decide—whether the transactions of May 9, 1924, were merely what they purported to be, deeds, lease and option, or were they intended to serve the interests and purposes of the parties as an equitable mortgage? Under that time-honored and practical test the evidence objected to was admissible. (*Moore v. Wade*, supra.)

Another point raised by appellant pertains to an amendment to the by-laws of the plaintiff fire insurance company. It seems that the insurance policy which covered the farmhouse provided that it was issued subject to the by-laws of the company, and that these might be changed, and after the policy was issued and before the house burned the by-laws were changed so as to avoid any policy issued by the insurer by "encumbering the property, changing the risk or increasing the hazard after issuance of policy, without the written consent of the company." This was a sound and prudent provision, no doubt, but not fairly susceptible of an interpretation that it affected the contract rights of holders of policies which were already issued and outstanding before that amendment to the by-laws was promulgated.

Yet another error is urged on our attention, based upon the allowance of an attorney's fee to defendant. However, it is clear that defendant had a *bona fide* cross action against plaintiff to recover on the insurance policy, regardless of the plaintiff's action to foreclose its mortgage. The statute is plain that where a lawsuit is necessary to realize on a policy of fire insurance an attorney's fee shall be awarded to the insured if he prevails, so here apparently the fee was awarded to defendant as a matter of strict statutory right. (R. S. 40-416.)

The size of the fee awarded is also criticized as excessive—$500. " 'Tis a good round sum," but that is a matter which is hard for this court to disturb. The record does show that unusual ability and resourcefulness of counsel were brought into the contest to defeat defendant's cross action on the fire insurance policy, and it can readily be discerned that considerable time, talent and energy were expended by defendant's counsel in prosecuting his cross action. But the record is too meager to permit this court to say that the trial court was too generous in fixing the amount of the attorney's fee.

Nowhere in the record does prejudicial error appear, and the judgment is therefore affirmed.