No. 35,900

T. J. CARROLL, *Appellee*, v. BENJAMIN H. NAFFZIGER et al., *Appellants*.

(142 P. 2d 818)

Opinion filed November 6, 1943.

*T. M. Lillard,* of Topeka, argued the cause, and *Samuel Griffin,* of Medicine Lodge, *H. E. Walter,* of Kingman, *O. B. Eidson, Philip H. Lewis* and *James W. Porter,* all of Topeka, were on the briefs for the appellants.

*E. C. Wilcox,* of Anthony, argued the cause, and *J. Howard Wilcox,* of Anthony, was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action in ejectment. Judgment was for the plaintiff. Defendants appeal. The plaintiff filed a short petition alleging that he was the legal owner and entitled to the immediate possession of the tract of farm land in question; that the defendants unlawfully kept him out of possession. His prayer was that they be ejected.

The amended answer of the defendants alleged in substance that they had owned the property and had been in possession of it for many years; that a mortgage which they had given on it had been foreclosed and the mortgagee had purchased the land at a sheriff's sale for $14,136.11 and the certificate of purchase had been issued to him; that on the third day of November, 1936, the plaintiff and defendants entered into an agreement, by the terms of which defendants agreed to convey all of their interest in the real estate to plaintiff by warranty deed; that it was further agreed that the land should be redeemed from the sheriff's sale by paying the bank the sum of $11,700, the plaintiff to furnish the sum of $9,000 and the balance of $2,700 to be furnished by the defendants and that the certificate of purchase should be assigned to plaintiff so he could obtain a full and complete title to the real estate after the period of redemption had expired. The answer also alleged that the defend-

ants should have the right to purchase the land back from plaintiff by paying the sum of $11,700 in installments as follows: $540 on November 1, 1937; $540 on November 1, 1938; $540 on November 1, 1939; $540 on November 1, 1940 and $9,540 on November 1, 1941, without interest if paid when due, and that the defendants agreed to pay the taxes. The answer also alleged that the agreement provided that upon the completion of the payments the plaintiff was to convey the land to defendants by a good and sufficient deed, together with an abstract of title showing a title clear of all encumbrances by, through or under plaintiff; that this deed and copy of the agreement was to be placed in escrow; that it was agreed that defendants should keep the buildings on the real estate insured; that they should have possession of it and farm it and receive all crops raised on it during the period in which no default was made; that if default should be made by the defendants there should be no liability attached to them. The answer further alleged the contract provided that should the defendants make default in the payments or fail to perform any of the covenants of the agreement it should terminate and the bank should deliver the deed to the plaintiff and the defendants should surrender full possession of the real estate to the plaintiff; that this agreement was reduced to writing and signed by plaintiff and a copy of it was attached to the answer. The answer further alleged that the certificate of purchase was obtained and assigned to the plaintiff; that the warranty deed was executed and delivered by the defendants to the plaintiff with the intention that the plaintiff should have a full and complete title to the real estate so that he could give a good and sufficient deed and title to the real estate upon payment by defendants of the stipulated price. The answer further alleged that defendants had performed all of the covenants in the agreement except the last payment of $9,540 but that the plaintiff had failed and refused to accept that payment although defendants were willing, ready and able to make it prior to the first day of November, 1941, and that defendants were still willing, ready and able to make this payment. The answer further alleged that after the period of redemption had expired on the eighth day of February, 1938, and before the first day of November, 1941, the date of the expiration of the agreement, plaintiff failed, neglected and refused to obtain a sheriff's deed to the real estate; that the plaintiff has failed and refused to execute and deliver to defendants a good and sufficient deed to it, together with an abstract

of title, showing a good title in him, notwithstanding the fact that defendants prior to the first of November, 1941, had offered on several occasions to pay him the last payment of $9,540 and had at all times since the fifteenth day of October, 1941, been ready, willing and able to pay said sum as soon as said plaintiff would perfect his title; that defendants have demanded of plaintiff prior to the first day of November, 1941, that he procure a sheriff's deed to the real estate under the certificate of purchase, place it of record and have it shown on the abstract, but that plaintiff had refused to do so. The answer further alleged that while the amount necessary to redeem the real estate from the sheriff's sale was $14,136.11 the defendants obtained the certificate of purchase at a reduced price of $11,700 and that of this purchase price the defendants were to pay the sum of $2,700 but as a matter of fact the plaintiff paid only $8,859.70 while defendants paid $2,840.30; that the certificate of purchase and the warranty deed were made and given to plaintiff to secure the payment of the sum of $8,859.70; that they were in fact and truth an equitable mortgage and created a lien on this real estate to secure the payment of said sum. The answer further alleged that the $540 payable each year for the years 1937, 1938, 1939 and 1940 were interest payments based on the $9,000 at the rate of six percent per annum; that the defendants had paid the sum of $2,840.30 of the principal and the several payments of interest and that they were now indebted to plaintiff in the sum of $8,859.70 with interest thereon at the rate of six percent per annum from November 1, 1941. The prayer of the answer was for a specific performance of the contract; that the plaintiff be required to perfect his title and have the same shown on the abstract and execute and deliver to the defendants a good and sufficient warranty deed, upon the payment by defendants to plaintiff of the sum of $8,859.70; that if the court should find that this certificate of purchase and warranty deed were in fact a mortgage given to secure the payment of the sum of $8,859.70 and to create a lien on the real estate, defendants asked that the lien be foreclosed as provided by law and for such other relief as defendants might be entitled to.

The reply of the plaintiff to that amended answer was first a general denial except as to the execution of the contract; second, that the plaintiff had complied with all the terms of the contract; that the defendant had neglected to pay the taxes on the real estate for the years 1939, 1940 and failed to pay the $9,540, which according to

the contract was to have been paid by the defendants, if they exercised their option according to the terms of the contract, whereupon the deed and other documents held in escrow were delivered to plaintiff in accordance with its terms. The reply further alleged that on the eleventh day of December, 1941, plaintiff served written notice on defendants that the option had not been complied with on the part of defendants and that the contract was forfeited and plaintiff demanded possession of the real estate, which defendants refused.

On motion of the plaintiff a receiver was appointed to take charge of this real estate.

When the case was tried on the merits the court held first that the burden of proof was on the defendants. The court then heard the evidence of the parties and found that plaintiff was the absolute owner and entitled to immediate possession of the real estate and ordered possession to be delivered to the plaintiff. At a subsequent time the report of the receiver was approved. From the final judgment in the action and the order overruling their motion for a new trial the defendants have appealed.

The appellee filed a motion to dismiss the appeal. The ground of this motion was that when the trial court appointed the receiver to take charge of the real estate the receiver made arrangements with the defendants to continue to farm the land. The defendants remained in possession and farmed the land pursuant to this contract between them and the receiver. When judgment was entered for the plaintiff the receiver made his report which the trial court approved. This report was to the effect that there was money due the defendants as a result of their having complied with this contract. They were paid this money and accepted it. The plaintiff argued that by accepting this money they acquiesced in the judgment and cannot now attack it. This point is not good. The defendants did not receive this money as a result of the judgment. They received it as a result of the contract with the receiver. Hence, the cases cited by the plaintiff are not in point.

At the trial the defendants first offered in evidence the files of the action wherein the foreclosure was had which resulted in the issuing of the certificate of purchase to which reference was made in the contract that had been attached to the answer. The objection of the plaintiff to this evidence was sustained. Its exclusion is urged as error by the defendants on this appeal. During the colloquy between court and counsel when this evidence was being tendered the trial court said:

"The theory I take of it is this: The parties by their pleadings and the opening statements, have shown that the parties made a contract between [them] with respect to this land. As I get your opening statements, the only issue between the parties here is whether or not Carroll prevented the Naffzigers from redeeming the land or carrying out the terms of the contract."

If this statement was correct then the court committed no error in excluding this evidence. If, on the other hand, the issues were properly as broad as contended for by the defendants then the evidence should have been admitted.

This takes us to an examination of the pleadings. It will be noted that the petition was simply a statement that the plaintiff was the legal owner of the real estate in question, was entitled to the possession of it, and defendants were unlawfully keeping plaintiff out of possession. On the face of the record the first of these allegations was true. The title to the real estate did stand in the name of the plaintiff. The statement that plaintiff was entitled to possession of the real estate, however, was more a conclusion of law than a statement of fact. As a matter of fact that is what the action was brought to determine.

The amended answer pleaded a situation such as has received the attention of this court many times where one usually termed a grantor has conveyed real estate to a grantee under such circumstances that this court has said that equitable principles would be applied and the conveyance, although absolute in form, be held to be a mortgage rather than an absolute conveyance. In such cases this court has held many times that evidence as to all the surrounding facts and circumstances leading up to the making of the written contract and the giving of the conveyance should be considered in order that the court might be informed as to the actual payments that had been made by the party claiming the equitable interest, whether the transaction was one which created a debt and in short whether the entire course of dealing was such as to require a court applying equitable principles to hold that the conveyance, while being absolute on its face, was other than what it appeared. See *Republic Mutual Fire Ins. Co. v. Johnson,* 128 Kan. 323, 278 Pac. 48, and cases there cited, also *Hegwood v. Leeper,* 100 Kan. 379, 164 Pac. 173.

Following this theory the answer alleged the facts as they have already been detailed in this opinion. The reply, as has been noted, alleged first a denial of all these facts except the making of the written contract. It then alleged facts which plaintiff claimed en-

titled him to forfeit the contract. It is true that defendants asked in their prayer that they have specific performance of the contract on payment by them of the balance of the purchase price and that they then asked if the trial court should hold that the certificate of purchase and warranty deed were in fact a mortgage, then that the lien be foreclosed as provided by law. No motion to require the defendant to elect or to make the answer more definite and certain was filed. If one had been filed, there was no inconsistency. As to the first part of the prayer, the answer alleged that defendants were endeavoring to comply with the terms of the contract when plaintiff demanded possession. This raised the question of whether the demand was premature or, stated in another way, whether equity required that defendants have additional time in which to comply with the terms of the contract. Should it be held that equity did not require this, still should it be held that the conveyance and certificate of purchase construed together were actually an equitable mortgage, then equity would require a holding that the remedy of plaintiff was to foreclose the mortgage so that the defendants would have a right of redemption. In either event the plaintiff would not be entitled to immediate possession as prayed for in the petition.

The evidence offered by defendants and excluded by the trial court was to the effect that they had owned and lived on the land in question; that a mortgage on it had been foreclosed and that the land was bid in for $14,136.11 by the mortgagee; that they were successful in persuading the mortgagee to accept $11,700 for the certificate of purchase; that plaintiff and his agent inspected the place and said they would not loan over $9,000 on it; that either plaintiff or his agent stated that it was necessary that the certificate of purchase be assigned to plaintiff as well as the deed made to him so that when the land was redeemed he could deed it back to defendants; that they did not understand at the time they signed the contract and executed the deed that they were conveying the title, but they thought they were securing the deed for the plaintiff to keep in escrow and hold as security; that defendants had already paid $2,700 of their own money toward the certificate of purchase and they would not have joined in the deed and conveyed their interest in the certificate of purchase unless the deed was to have been held as security. They also offered to prove that they borrowed some money from a bank and with this, together with money they received from the sale of wheat, they were able to raise $2,700 which

they paid to the plaintiff in the mortgage foreclosure action to make up the balance over and above what they obtained from the plaintiff in this action necessary to redeem the land from the sale; that during all conversations leading up to the execution of the contract the plaintiff and his agent said that he would have to have six percent on his money and that they were given to understand that the payments of $540 per year were interest payments; that after the contract had been entered into the defendants continued in possession; kept the buildings in repair and made the interest payments of $540 each year up until November 1, 1941, and shortly prior to that date had arranged at the bank for the necessary funds to pay off the final amount due the plaintiff, including $8,000 from a loan company to be secured by a mortgage on the land. As has been noted, all this evidence was excluded by the trial court on account of the narrow view the court took of the issues. As has already been demonstrated in this opinion, this view was too narrow and it was error to reject the proffered testimony.

This would require that the judgment of the trial court be reversed and a new trial ordered. There is a further question raised, however, by the defendants in this appeal. They argue that either on the theory that the plaintiff held an equitable mortgage or that the defendants, as grantees in the repurchase contract had paid sums entitling them to a substantial equity in the land, the court should have dealt with the situation on equitable principles by requiring proceedings in the nature of an equitable foreclosure allowing the defendants a redemption period and should not have allowed the equitable interest of the defendants to be summarily extinguished by ejectment. We have heretofore demonstrated in this opinion that should the rejected evidence have been admitted and believed by the trial court it would have required a holding in favor of the defendants on the grounds that the entire transaction constituted an equitable mortgage. There is a further ground, however, which requires that this judgment be reversed and judgment be ordered in favor of the defendants. That is the ground that the plaintiff acted too precipitately in demanding possession of defendants forty-one days after November 1, 1941. There is no dispute about the fact that the $540 payments were made each year until November 1, 1941, and that shortly before that date the defendants began negotiating for a loan to enable them to make the payment of $9,540 which was due November 1, 1941, and that they had made arrange-

ments to borrow from other sources what they would need over and above what they could borrow on the land from a loan company. It was undisputed that they had made arrangements to get the full amount necessary and that it was ready for them when some technical requirements as to the abstract were complied with. The testimony was that these negotiations were carried on and ready for completion sometime before November 1, 1941. There is undisputed testimony that at a conference between plaintiff and defendants the latter part of November, 1941, the plaintiff said that he would not answer the question as to whether he would accept the money if it were tendered to him "until the money was put down on the table." The testimony of the plaintiff himself was that during the third week in November when he was asked whether he would accept the $9,540 he said "Well, I says you put the money on the table and I will answer your question, whether I will take it or not." There was some testimony to the effect that the loan was not actually completed November 1, 1941, because the loan company required that the plaintiff secure a sheriff's deed. The evidence shows that there was some talk between the parties as to whether it was necessary for the plaintiff to secure this deed and that the plaintiff objected finally to paying the expense of securing it. There was also a question about a small judgment against the defendants but it appears that this requirement of the loan company was waived. The plaintiff's evidence showed that on December 11, 1941, the plaintiff served notice on the defendants that because they had neglected to pay the sum of $9,540, which was due November 1, 1941, and had neglected to pay taxes assessed against the real estate for the years 1939 and 1940 the plaintiff declared the option forfeited and demanded the possession of the real estate.

The plaintiff in his reply stated that the taxes for the years 1939 and 1940 were not paid by defendants. This failure constituted a failure to perform one of the provisions of the written agreement, that is, to pay the taxes each year and was ground for forfeiture and termination of the contract. Subsequent to this failure to pay the taxes for 1939 plaintiff accepted one payment of $540 on November 1, 1940.

This contract provided that time was of its essence. The privilege to declare forfeiture was waived by accepting this payment of $540 long after there had been default as to one of the conditions

of the contract. In *Luther v. Hekking*, 110 Kan. 478, 204 Pac. 523, in considering an analogous situation we have said:

"This acceptance did not, ipso facto, effect permanent waiver of the forfeiture privilege, but it placed the parties in such a situation that forfeiture could not be declared without previous notice that the privilege would be insisted on. What the vendors should have done on May 12 was to serve on the vendees notice that, unless defaults were made good within a stated reasonable time, the contract would be declared forfeited. This is the doctrine fairly indicated by the decision in the case of *Drollinger v. Carson*, 97 Kan. 502, 155 Pac. 923, on which the vendors rely, and is the true doctrine."

See, also, 66 C. J. 767, § 356.

The holding of this court in *Holman v. Joslin*, 110 Kan. 674, 204 Pac. 697, is in harmony with the above rule. Also, see *Home Owners' Loan Corp. v. Jaremko*, 146 Kan. 328, 69 P. 2d 1096. In that case even though we held that the contract was actually a contract for the sale of real estate and would be construed as an equitable mortgage, we said:

"Should the argument of plaintiff be followed, then no matter how long the buyer or optionee should remain in possession and make the payments as required and comply with the other requirements of the contract, the minute he failed to comply with them he could be let out, his rights in the property being forfeited.

"This practice has never had the approval of this court, nor does G. S. 1935, 67-251, contemplate that there could be such a result. Where the enforcement of the forfeiture provisions of a contract for the sale of land would be inequitable the forfeiture will not be decreed. (See *National Land Co. v. Perry*, 23 Kan. 140; *Lumber Co. v. Horrigan*, 36 Kan. 387, 13 Pac. 564; *Geffert v. Geffert*, 98 Kan. 57, 157 Pac. 384, and *Holman v. Joslin*, 110 Kan. 679, 205 Pac. 629.) This is true even where time is made the essence of the contract as was the case here."

Upon the undisputed facts that the defendants here had remained in possession of the land; had met the annual payments on four different occasions and were in the process of completing a loan to enable them to comply with its provisions at the time notice demanding possession was served upon them, we hold that this was the sort of a contract wherein equity will deny the plaintiff the drastic remedy of forfeiture and right of immediate possession without giving the defendants a reasonable time in which to comply. This holding requires that the judgment be reversed with directions to render judgment for the defendants.

The defendants argue further that the court erred in not finding that the plaintiff had prevented them from complying with the

492

contract and in holding that the burden of proof was on them. On account of the conclusion we have reached as to other questions it will not be necessary to decide those interesting questions.

The judgment of the trial court is reversed with directions to enter judgment for the defendants.