No. 45,131

MILTON BERGER (a/k/a MILTON J. BERGER) and MARTHA BERGER (a/k/a MARTHA M. BERGER), *Appellees*, v. JOHN H. BIERSCHBACH, *Appellant*.

(443 P. 2d 186)

Opinion filed July 13, 1968.

*Edgar Wm. Dwire,* of Wichita, argued the cause and was on the brief for the appellant.

*Kenneth G. Speir,* of Newton, argued the cause and *Vernon A. Stroberg, Herbert H. Sizemore,* and *Richard F. Hrdlicka,* all of Newton, were with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This appeal stems from a judgment of the Harvey County District Court adjudging that a warranty deed given by the plaintiffs, Milton and Martha Berger, to the defendant, John H. Bierschbach, was an equitable mortgage and that the defendant should reconvey the land to plaintiffs upon payment of their indebtedness into court. The plaintiffs have paid the money into court, but the defendant has refused to accept the same, and has filed this appeal. Throughout this opinion the appellant will be referred to as the defendant, or Bierschbach, and the appellees as plaintiffs, or the Bergers.

For many years Mr. and Mrs. Berger have farmed a half section of land located in Harvey County, and described as follows:

The North Half (N/2) of Section 29, Township 23 South, Range 1 West of the 6th P. M., according to the Government Survey thereof.

In the spring of 1962, they had an opportunity to buy the farm from the Grove Estate for the sum of $60,000, of which amount $40,000 could be obtained through a loan with Prudential Insurance Company. The Bergers were unable, however, to raise the remaining $20,000 from their own resources and, accordingly, they turned for help to their erstwhile friend, Mr. Bierschbach, who had previously told them if the place was ever put up for sale they should buy it, and that he would help them finance the purchase.

Bierschbach agreed to put up $16,000 of the $20,000 which remained, and two contracts were thereafter drawn up and executed, the first denominated "Agreement for Option and Contract," the second, "Agreement and Option." The substance of these documents, taken together, was that Bierschbach should furnish $16,000 to apply on the purchase price and the Bergers would put up $4,000; that the Bergers would deed the land to Bierschbach, in return for which they were granted an option for 14 months to repurchase the farm for $16,000, plus interest at 6% and any taxes that might at

the time be due, and plus also the assumption of Prudential's mortgage, which both Bierschbach and the Bergers had signed. The sale of the farm from the Grove Estate to the Bergers was completed shortly, and the Bergers delivered their deed to Bierschbach.

By a written agreement executed October 18, 1963, the option to purchase was extended to November 1, 1964, the purchase price being raised to $18,000 and interest being set at 5%. A year later the option was extended a second time to November 1, 1965, and the purchase price was increased to $19,000 and the interest lowered to 4%.

Both Mr. and Mrs. Berger testified that in either July or August of 1965, and after they had been assured they could refinance their Prudential loan for enough to pay Mr. Bierschbach in full, they went to see the defendant and offered to pay him off. Bierschbach spurned their offer, saying that he wanted his money to work and had no use for it otherwise. At this time, according to plaintiffs, Bierschbach said he saw no reason why they could not continue as in the past, and assured them he would renew the current agreement when it expired.

Apparently some difficulty was experienced in getting in touch with Bierschbach about November 1, 1965, and it was not until December 1, 1965, that he met with the Bergers in the office of Fred Ice, a Newton attorney, to have their agreement extended. At this time Mr. Ice prepared a third extension agreement. This document, which was never signed, provided for extending the option to December 1, 1966, on terms similar to those of prior years except that the purchase price was increased to $20,000. Interest was to remain at 4%. Bierschbach took this agreement home to read, and not long thereafter instructed Mr. Arthur Turner, another Newton attorney, to prepare a new option for $28,000, but Mr. Berger, understandably, would not consider this price.

In January, 1966, the Bergers made new arrangements to borrow an amount sufficient to pay Mr. Bierschbach and in the latter part of that month Mr. Suderman, of the Midland National Bank, addressed two letters to Bierschbach advising him that plaintiffs were ready to pay him in full. In response to the second letter the defendant informed Suderman he did not want the money and would not sign a deed.

On February 24, 1966, Bierschbach's present attorneys wrote the

Bergers from Wichita advising them that their option to purchase had expired and would not be renewed. The letter also informed plaintiffs that they were tenants at sufferance, and demanded payment of $2,420 in rent they claimed was due.

This lawsuit soon followed. The petition contained two causes of action: One to declare the deed a mortgage and the second to recover damages for slander of title. The trial court entered judgment for plaintiffs on their first cause of action but reserved jurisdiction to determine the second.

Decisions of this court have long recognized the rule that where a deed, although absolute on its face, has been given to secure the payment of a debt the deed is to be considered an equitable mortgage rather than an absolute conveyance. (*Moore v. Wade*, 8 Kan. 380; *McDonald & Co. v. Kellogg, Trustee*, 30 Kan. 170, 2 Pac. 507; *Hegwood v. Leeper*, 100 Kan. 379, 164 Pac. 173; *Carroll v. Naffziger*, 157 Kan. 482, 142 P. 2d 818.) Where the circumstances disclose that such a deed was intended merely to serve as security for the indebtedness, principles of equity come into play and must be applied, and the debtor who executed the conveyance is entitled to a reconveyance of the land upon payment of his debt. In *Jones v. Jones*, 161 Kan. 284, 167 P. 2d 634, it was held:

"The character of the instrument as a mortgage having been established, upon payment of the debt, the debtor was entitled as a matter of law to have the mortgaged real estate reconveyed to him." (Syl. ¶ 2.)

Despite the consistency of our decisions adhering to the equitable principles to which we have referred, the defendant insists that the terms of his deed are clear and unambiguous and that the deed conveyed full title. Thus, argues Mr. Bierschbach, the court erred in admitting oral testimony tending to vary or contradict terms of the deed. We do not agree. It has been held repeatedly by this court that parol evidence is admissible to establish that a conveyance, absolute in form, was given for the purpose of securing indebtedness, and hence is but a mortgage. (*Jones v. Jones*, supra, *Carroll v. Naffziger*, supra.) On this very point we spoke in *Hegwood v. Leeper*, supra, as follows:

". . . In this state, and in most others where the matter has been passed upon, oral evidence is admitted to show that an instrument in the form of a deed was intended as a mortgage. And the practice is sustained, not only against the objection that it violates the rule forbidding the varying of a written contract by parol, but also against the specific objection that it is within the prohibition of the section of the statute of frauds relating to the creation of trusts concerning lands. (Citing cases.)" (p. 381.)

In *Republic Mutual Fire Ins. Co. v. Johnson,* 128 Kan. 323, 278 Pac. 48, where the circumstances bear much similarity to those in the case at bar, this court said:

". . . There is no principle of equity better settled, or better supported in justice and good conscience, than the doctrine that a deed purporting to convey all title and interest from a grantor to a grantee may in fact be no more than an equitable mortgage (*McNamara v. Culver,* 22 Kan. 661; *Overstreet v. Baxter,* 30 Kan. 55, 1 Pac. 825; *Timma v. Timma,* 72 Kan. 73, 82 Pac. 481; *Moody v. Stubbs,* 94 Kan. 250, 146 Pac. 346; *Gilmore v. Hoskinson,* 98 Kan. 86, 157 Pac. 426; *Kolar v. Eckhardt,* 119 Kan. 518, 240 Pac. 947; *Rusco v. DeGood,* 127 Kan. 708, 275 Pac. 201); and between the parties thereto and those in no better position than the contracting parties the facts pertaining to the execution of such an instrument may be shown by any competent evidence, parol or otherwise. (*Bank v. Kackley,* 88 Kan. 70, syl. ¶ 2, 127 Pac. 539; *Dyer v. Johnson,* 109 Kan. 338, 198 Pac. 944; *Bank v. Bank,* 111 Kan. 682, 208 Pac. 636; *Clark v. Howe,* 121 Kan. 204, 247 Pac. 113.) See, also, *Farmers State Bank v. St. Aubyn,* 120 Kan. 66, 70, 242 Pac. 466." (pp. 326, 327.)

The defendant likewise seeks to invoke the parol evidence rule in relation to the written option agreement and its extensions. We are frank to say that in our view those agreements are equally as consistent with the plaintiff's claim as with the defendant's. Be that as it may, the option agreement was executed as an integral part of the transaction in which Bierschbach put up his money and was given a deed, and the rule which permits parol evidence to establish a deed as an equitable mortgage was just as applicable to the option agreement as to the deed itself.

The defendant asserts the trial court was in error in finding that a debt existed on the plaintiffs' part, and he refers us to decisions where we have said that the test in determining whether a deed is in fact a mortgage, is whether an indebtedness was owed by the grantor to grantee. (See *Roberts v. Williams,* 179 Kan. 498, 297 P. 2d 206, and cases cited therein.) Conceding such to be the test, the difficulty with the defendant's argument is simply this: The trial court found an indebtedness *did* exist from the Bergers to Bierschbach. This finding is amply sustained by evidence.

Not only did the Bergers testify to such indebtedness, but attorneys and others who participated in the transaction back in 1962, supported them. No principle of appellate review is more widely recognized than that findings of fact which are sustained by substantial competent evidence will not be set aside on appeal. (See cases in 1 Hatcher's Kansas Digest (Rev. Ed.) Appeal & Error, § 507.) This rule is, indeed, most apropos in this case.

An argument is made that because no mortgage registration fee had been paid on the Bergers' deed it was not only inadmissible in evidence but the court lacked jurisdiction to treat it as an equitable mortgage. A similar contention was before this court in *Clark v. Axley,* 174 Kan. 3, 254 P. 2d 313, which was an action to enforce a contract for conveyance of real estate. The trial court entered a money judgment in plaintiff's favor and decreed that the defendant execute a deed. On appeal, the defendant contended the written contract was inadmissible in evidence since no registration fee had been paid. This court rejected that contention and simply held that the provisions of G. S. (now K. S. A.) 79-3101, 3102 and 3103 did not apply to that kind of a contract.

We have previously said that the registration fee required to be paid on mortgages of real property before they can be recorded is essentially a tax, and that it was so recognized by the legislature at the time of its enactment. (*Missouri Pacific Railroad Co. v. Deering,* 184 Kan. 283, 286, 336 P. 2d 482, and cases therein cited.) Thus the statute is intrinsically a revenue measure. Failure to pay the registration fee, or tax, does not vitiate an instrument given as security, even though its enforcement as a mortgage may not be entered by any court until the fee has been paid. The plaintiffs in this case do not seek the enforcement of a mortgage, equitable or otherwise; they seek merely to compel a reconveyance of their property upon payment of their indebtedness. This distinction is both substantial and noteworthy. In our opinion, the deed was properly admitted.

Complaint is made that the trial court admitted in evidence the unsigned agreement drawn up by Mr. Ice on December 1, 1965, extending the Bergers' option for another year. In addition to admitting the unsigned document in evidence, the court made a finding that the parties agreed on December 1, 1965, to extend the option to December 1, 1966, agreed on the amount of the indebtedness then due ($20,000) and agreed on the future rate of interest (4%), all of which was reduced to writing in the unsigned draft prepared by Mr. Ice. The defendant maintains that the unsigned draft was inadmissible, and that any oral agreement which the parties may have reached at the time the draft was prepared is unenforceable under the statute of frauds.

We shall not long belabor either point raised by the defendant. The fact is that the court's judgment does not purport to find that

any agreement reached on December 1, 1965, constituted an equitable mortgage. The court found, instead, that the deed executed May 2, 1962, was given to secure indebtedness owed by the Bergers to Bierschbach, and that this deed, not an extension agreement, was an equitable mortgage. It is true the court found the indebtedness to the defendant was $20,124.44, this amount being determined by accepting the $20,000 which the parties on December 1, 1965, agreed was then owing, and by adding 4% interest thereto. This is not to imply, however, that the court predicated its judgment on an unsigned option agreement. In our opinion the unexecuted extension agreement was properly admitted as a part of the total circumstances attending the dealings had between the parties. Certainly its admission may not be termed prejudicial.

The defendant objects that tender of the option price was not made until after the second extension had expired on November 1, 1965. It is true that tender was not made until January 26, 1966, but this becomes of little consequence in view of the trial court's finding that the deed and concomitant option agreement culminated in an equitable mortgage. Thus the relationship existing between the Bergers and Bierschbach was that of mortgagors and mortgagee. The Bergers, as mortgagors, possessed the statutory right of redemption provided in K. S. A. 60-2414. The mortgage remained unforeclosed, and the fact that the Bergers may have been late in attempting to exercise the option to purchase granted by Mr. Bierschbach does not preclude them from asserting their right to redeem. (*Live Stock Co. v. Trading Co.*, 87 Kan. 221, 123 Pac. 733, *Carroll v. Naffziger*, supra.)

Furthermore, the defendant is in no position to complain about any delay in tender. According to the Bergers, and as found by the trial court, Mr. and Mrs. Berger, in July or August of 1965, made arrangements to borrow additional money to pay Mr. Bierschbach and then offered to pay him in full. At that time Bierschbach professed indignation that the Bergers would curtail the flow of interest into his coffers and gave his friends to understand that he wanted not his money, but would extend the option when it came due. To say the least, Bierschbach's conduct would tend to lull the Bergers into a sense of false security. He cannot now, in good conscience, assert that the Bergers were late in making their tender.

This is essentially a fact case in which the trial court made extended findings of fact and comprehensive conclusions of law, after

which it entered judgment in favor of the plaintiffs. The court's findings are amply documented in the evidence and we conceive its conclusions to be fully justified. Although the original option agreement and its subsequent extensions speak of leasing the land to the Bergers, the status of Mr. and Mrs. Berger clearly appears to be more than that of mere tenants. In our view, the several instruments, themselves, tacitly concede a beneficial interest existing in the plaintiffs. The Bergers not only paid $4,000 of their own money on the purchase price of the land, but they also paid all of the sale expenses, the unearned insurance premium and the entire registration tax due on the Prudential mortgage.

Since delivering their deed to Bierschbach, the Bergers have paid all taxes levied against the land, have made all payments of principal and interest due on Prudential's mortgage, have paid all insurance premiums on the property (the policies showing Berger as the insured) and have expended substantial sums in maintaining and improving the premises. No rent, either in cash or crops, has been demanded of plaintiffs and none has been paid. On the contrary, a startling amount of interest has accrued on the original $16,000 indebtedness to the end that at the date of tender, January 26, 1966, the total sum of $20,124.44 was found to be due Mr. Bierschbach.

This principal sum came into existence by adding the interest falling due each year to the principal required for reconveyance, Mr. Bierschbach testifying that he "preferred to just raise the option rather than have the Bergers pay the interest." This sounds very much like a money lender who has made a loan—and at interest. That Bierschbach may have attempted to disguise the interest by adding it to principal does not change the alchemy of the debtor-creditor relationship, and we conclude the trial court did not err in its findings.

The judgment of the court below must be affirmed, and it is so ordered.