Universal v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00681-CV







Universal Underwriters Insurance Company, Appellant



v.



State of Texas et al., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 92-16867, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING








 In this tax protest suit, appellant Universal Underwriters Insurance Company
("Universal") appeals from a summary judgment in favor of the State of Texas and other statutory
defendants. (1) In a single point of error, Universal contends that the trial court erred because, as
a matter of law, a note and unrecorded Kansas real estate mortgage differs in character from an
identical note and unrecorded mortgage on Texas real estate. We will affirm. 

FACTUAL AND PROCEDURAL BACKGROUND


 The Texas Insurance Code requires insurance companies, like Universal, to pay
a gross premiums tax. Tex. Ins. Code Ann. art. 4.10, § 1 (West Supp. 1995). The tax rate is
calculated by the ratio of certain "Texas investments" the company owns compared to "similar
investments" in the state other than Texas where the company invests most heavily. Id. § 10. 
Companies qualify for a lower tax rate when their Texas investments are equal to or greater than
eighty-five percent of the amount of similar investments in such other state. Id. §§ 7, 10. 
Consequently, the characterization of an investment as a "similar investment" affects a company's
gross premiums tax.

 This dispute centers on the characterization of a specific investment, a note secured
by an unrecorded Kansas mortgage, as a "similar investment." Universal is a wholly-owned
subsidiary of Zurich Holding Company of America. Zurich purchased an office building for
Universal's headquarters in Overland Park, Kansas at a cost of approximately $18 million, $12
million of which Zurich borrowed from Universal by an interest-bearing note. A mortgage on
the building accompanied the note. The note stated, "This note is secured by a real estate
mortgage dated January 4, 1988." Universal, however, did not record the mortgage.

 Following an audit of tax year 1988, the Texas Department of Insurance determined
that the note secured by the Kansas mortgage was a "similar investment" to a note secured by a
Texas real estate mortgage under article 4.10 of the Insurance Code. See id. §§ 8, 9 (West 1981
& Supp. 1995). Consequently, the Department of Insurance concluded that Universal should have
been taxed at a higher rate because its total Texas investments were less than eighty-five percent
of its similar investments in Kansas, the state where Universal invested most heavily. Under
protest, Universal paid additional gross premium taxes of $839,178.26 as a result of the higher
tax rate. 

 Universal then brought a tax protest suit in district court to recover this payment. 
See Tex. Gov't Code Ann. § 403.203 (West 1990). In the trial court, Universal claimed that the
mortgage was not a "similar investment" because it was invalid under Kansas law since it had not
been recorded. See Kan. Stat. Ann. §§ 79-3102, 3107 (1989). On cross-motions for summary
judgment, the trial court concluded that the note was a similar investment under article 4.10 and
that the tax was correctly assessed. Universal appeals in a single point of error, reiterating its
claim that the note is not a similar investment.


DISCUSSION


 The Insurance Code defines similar investments as "the same character of property
and investments described in Section 8 hereof, located in a state other than Texas and originating
and existing with the same relationship to such state as the location and relationship of such
property to the State of Texas." Tex. Ins. Code Ann. art. 4.10, § 9 (West 1981) (emphasis
added). Article 4.10, section 8 identifies only three categories of Texas investments: (1) bonds,
warrants, and interest-bearing indebtedness of Texas state or local government entities, (2) notes
and bonds secured by mortgage or deeds of trust on real property located in Texas, and (3) cash
deposits in Texas banks or savings and loan associations. Id. § 8. Hence, the sole question in
this case is whether the Kansas note and mortgage is of the "same character" and has the "same
relationship" to that state as a Texas note and mortgage. We answer in the affirmative.

 Kansas law requires a hefty filing fee before any mortgage is filed and recorded. (2) 
Kan. Stat. Ann. § 79-3102(a) (1989). To enforce this requirement, Kansas law also provides:


Any mortgage of real property executed on or after March 1, 1925, on which the
registration fee as herein provided has not been paid, shall not be filed for record
by any register of deeds, and such mortgage shall not be received in evidence in
any suit, action or proceeding, and no judgment, decree or order for the
enforcement thereof shall be rendered, made or entered in or by any court in this
state.


Id. § 79-3107. In contrast, Texas has no such requirement. The registration and filing
requirement is necessary only to protect a grantee's interest against claims of third parties who
assert that they are bona fide purchasers for value without notice of the mortgage. See Tex. Prop.
Code Ann. § 13.001 (West 1984 & Supp. 1995); Burris v. McDougald, 832 S.W.2d 707, 709
(Tex. App.Corpus Christi 1992, no writ). Universal argues that because Kansas law requires
filing before a court can enforce the mortgage, the note was not the "same character of property"
with the "same relationship" as such an instrument in Texas. We disagree.

 Kansas law is settled that even if the filing and fee requirements are not met, the
instrument is still valid as between the parties; it simply cannot be made the basis of a cause of
action. Nebraska Hardware Mut. Ins. Co. v. Johnson, 137 P.2d 125, 128 (Kan. 1943). "In other
words, one who owns a mortgage cannot refuse to pay taxes to support the courts, and then resort
to the courts to collect his mortgage." Ditzen v. Given, 32 P.2d 448, 450 (Kan. 1934). The
Kansas Supreme Court explained:


 We have previously said that the registration fee required to be paid on
mortgages of real property before they can be recorded is essentially a tax, and that
it was so recognized by the legislature at the time of its enactment. Thus the
statute is intrinsically a revenue measure. Failure to pay the registration fee, or
tax, does not vitiate an instrument given as security, even though its enforcement
as a mortgage may not be entered by any court until the fee has been paid.


Berger v. Bierschbach, 443 P.2d 186, 190 (Kan. 1968) (citations omitted). 

 Based on Kansas law, it is clear that Universal's note was secured by a valid
mortgage, despite a lack of recording. Because the mortgage was between affiliated companies,
thus effectively eliminating the risk that the grantee might secretly convey the property to a third
party, Universal prudently chose not to pay the $30,000 filing fee required to record the
mortgage. This sensible business decision did not transform a valid mortgage into an invalid one,
and Kansas law so holds. See Berger, 443 P.2d at 190; Johnson, 137 P.2d at 128. Indeed, under
Kansas law the recording fee can be paid at any time, even as late as the date of the trial of a suit
to foreclose the mortgage. See Fowler v. Moore, 75 P.2d 222, 224 (Kan. 1938). We therefore
hold that Universal's mortgage was the same character of property as a Texas mortgage, with the
same relationship to the State of Kansas. (3)

 Finally, Universal argues that the mortgage is not a similar investment because an
audit by the National Association of Insurance Commissioners ("NAIC") concluded the mortgage
was not an "admitted asset." The NAIC audit conferred a zero asset value on the note: "The
Company shows a mortgage loan in the amount of $12,000,000 in its 1988 and 1989 annual
statements. This amount is being not admitted for this report, since the documents held by the
Company have not been filed and recorded in county records as is required for an admissible
mortgage loan on real estate." This conclusion, however, has no bearing on whether the mortgage
was a similar investment for purposes of article 4.10 of the Insurance Code.

 Texas has similar provisions regarding "admitted assets," which are the measure
of an insurance company's solvency. See Tex. Ins. Code Ann. art. 3.33, § 4(k) (West Supp.
1995). However, the calculation of admitted assets relating to solvency is irrelevant to the
determination of what is a similar investment under Texas law. Similar investments under article
4.10 are not required to be "admitted assets." See id. art. 4.10, §§ 8, 9 (West 1981 & Supp.
1995); cf. id. art. 4.11, §§ 5-5E (West Supp. 1995) (calculating ratios of investments by admitted
asset value). The fact that the NAIC audit did not treat the mortgage as an "admitted asset" does
not alter the character of the investment; it was still a $12 million mortgage. (4) Because this
mortgage secured a note, it was a similar investment under article 4.10.




CONCLUSION


 We hold that under the present circumstances, the note secured by an unrecorded
Kansas mortgage is a "similar investment" as defined in article 4.10, section 9 of the Insurance
Code. Accordingly, the tax was properly assessed. Universal's sole point of error is overruled. 
The trial court's judgment is affirmed.



 J. Woodfin Jones, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: July 12, 1995

Publish
1.   The other statutory defendants are: Attorney General Dan Morales; then State
Treasurer Kay Bailey Hutchison; State Board of Insurance; then State Board of
Insurance Members Claire Korioth, Richard Reynolds, and Allene Evans; then
Commissioner of Insurance Georgia Flint; and the Office of the Commissioner of
Insurance.
2.   In 1988, the statute required a filing fee of $.25 for each $100 of principal debt. 
Kan. Stat. Ann. § 79-3102(a) (1989). This would have required Universal to pay a
$30,000 filing fee on its $12 million mortgage.
3.   Universal also argues that, in order to come within the statute, there must be an
identical relationship between the investment and the state. This is a misreading of the statute. 
It requires the "same character of property" with the "same relationship to such state." For
example, another Texas investment is a bond from a Texas state or local government entity. 
Tex. Ins. Code Ann. art. 4.10, § 8(a) (West Supp. 1995). To qualify as a similar investment
under section 9, the property must merely be of the same character (a bond) with the same
relationship to such state (a bond from a Texas state or local entity). In this case, the property
was of the same character (a note secured by a mortgage on real property) with the same
relationship to such state (a note secured by a mortgage on real property located solely in
Kansas).
4.   Universal does not challenge the valuation of the mortgage on appeal. The value of
a note under article 4.10, section 8 is expressly defined as its unpaid principal balance. 
Tex. Ins. Code Ann. art. 4.10, § 8(b) (West 1981).