No. 27,376.

JOHN H. MILLER, *Appellee,* v. THOMAS R. CLONEY, *Defendant;*
C. A. MILLER, *Appellant.*

SYLLABUS BY THE COURT.

1. MORTGAGES—*Absolute Deed as Mortgage—Parol Proof.* The execution of a deed, absolute in form, intended by the parties as a security for an indebtedness will be treated as a mortgage, and their contemporaneous agreement evidencing such intention may be shown by parol proof.

2. SAME—*Absolute Deed as Mortgage—Renunciation by Grantee—Limitations.* Where the grantee, so-called, recognizes the intention and agreement for a time, but later renounces his trust and claims the instrument was an outright conveyance, which vested the absolute title in him, an action may be brought by the grantor to declare the instrument to be a mortgage and for other relief within two years after the actual discovery of the fraudulent renunciation of the trust by the grantee.

3. LIMITATIONS OF ACTIONS — *Fraud — Constructive Discovery.* The rule of constructive discovery does not apply where the grantee in the instrument mentioned, executed a mortgage on the property which is placed on record, and the statute of limitations does not begin to run until the actual discovery of the fraud by the grantor.

4. TRIAL—*Instructions.* Objections to instructions given are held to be without merit.

Appeal from Crawford district court, division No. 1; DANIEL H. WOOLLEY, judge. Opinion filed May 7, 1927. Affirmed.

*Arthur Fuller,* of Pittsburg, for the appellant.

*John P. Curran, E. V. Bruce* and *C. S. Denison,* all of Pittsburg, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The principal question involved in this action was whether a certain instrument in form a deed, was in fact a mortgage.

On September 27, 1915, the plaintiff John H. Miller executed an instrument which purported to convey legal title to real estate in Pittsburg, to Thomas R. Cloney, for a named consideration of $2,000. Plaintiff alleged that he owned the property; that a mortgage amounting to $539.75 was about to be foreclosed and the property sold; that being uneducated in the English language, and un-

Limitations of Actions, 37 C. J. pp. 925 n. 56, 928 n. 79, 933 n. 24. Mortgages, 41 C. J. pp. 310 n. 64, 350 n. 39, 363 n. 14, 364 n. 27, 366 n. 58; L. R. A. 1916B, 18; 19 R. C. L. 248.

Miller v. Cloney.

familiar with business methods and practices, he applied to Cloney, with whom he had had confidential relations, and had depended on Cloney to advise him concerning business matters. When plaintiff appealed to Cloney for advise as to the mortgage debt, he was advised that the better plan was to execute a deed to Cloney, who said he would obtain the money to pay the mortgage debt, and that he would take charge of the property, and when the rentals accruing from it were sufficient to pay the debt the property would be conveyed back to plaintiff and the deed canceled or released. He alleged that Cloney further advised the plaintiff that the deed in effect would be a mortgage. It was alleged that Cloney had raised the money and paid the mortgage debt, had taken possession of the property in September, 1915, and had been receiving the rentals on it since that time, and further that the rentals are far in excess of the mortgage debt to secure which the deed was executed. Plaintiff further stated that in 1923, he demanded that Cloney account for the rents and profits of the property, and that the deed be canceled or otherwise released, but that he refused to render an account or to cancel or release the deed. There was an averment to the effect that Cloney had placed mortgages on the property in 1922 without plaintiff's consent, and he asked that the mortgagees be made parties and that if legal liens existed by reason of the mortgages, that defendant, Cloney, be adjudged to pay them.

The defendant, Cloney, answered in effect that the warranty deed was an outright conveyance for a consideration of $558.25 and was never intended to be or to operate as a mortgage. He also alleged that he had mortgaged the property, paid taxes thereon, and had expended considerable sums of money for improvements and repairs on the property. One of his defenses was that the plaintiff's action was barred by the statute of limitations.

A jury was called to pass upon the disputed facts and it returned a finding that the instrument was intended to be and was a mortgage, and judgment was accordingly entered. There was testimony to the effect that plaintiff had worked for defendant and had been advised and helped by him previous to the transaction in question, that he had been advised by him and had relied on his advice, and had previously found it to be good. He testified that he went to Cloney when the mortgage was to be foreclosed, told him he did not have the money to pay the debt and that Cloney advised him that the debt must be paid and if plaintiff would make a deed to him he

would obtain the money and pay the debt. Cloney stated that he would take possession of the property and hold it until the debt and all expenses had been repaid out of the rentals and then he would reconvey the property to plaintiff. Four or five years afterwards he said he called on Cloney and inquired if the rentals had not paid out the obligations against the property and was told that they had not and would not be sufficient for quite a while yet, he told plaintiff not to be in a hurry, and that he would let plaintiff know when that time came. Finally in 1923, he asked him again for a settlement, when Cloney just laughed at him and said that there would be no settlement, that he had purchased the property outright and had a good deed for it. Plaintiff's testimony was to the effect that the property was worth about $2,300 in 1915, and that the reasonable market value of it as of the time of the trial was $2,500.

A number of points are raised by the defendant, Cloney, one of which is that the action is one for relief upon the ground of fraud and that the statute of limitations began to run within two years from the discovery of the fraud, that the execution of the mortgage in which the mortgagor claimed to be the owner of the property, was notice to Cloney that the plaintiff claimed to own it and started the statute of limitations. He further contends that no confidential relation between the parties existed as pleaded and that the instruction given by the court defining confidential relationship was erroneous.

Upon a motion for judgment on the pleadings and also upon the evidence, the defendant raised the question that plaintiff's action was based upon fraud and was barred by the two-year statute of limitations. It was pleaded and the evidence showed plainly enough that the deed was in fact a mortgage when executed and was so intended and regarded by Cloney. According to the accepted testimony, Cloney several years after the execution of the instrument still recognized that it was made to secure the indebtedness which he had assumed and paid and that plaintiff was entitled to a reconveyance when the indebtedness against the property had been discharged by the rentals received. That is indicated by the statement of plaintiff several years after the instrument was executed, that the rentals he had received were yet insufficient to discharge the obligations against the property and further that they would not be discharged for a considerable time, and that he would notify plain-

tiff when that time arrived. Aside from the direct evidence as to the intention to create a mortgage, there is the element that the value of the property was greatly in excess of the indebtedness as the testimony tended to show the property to be of the value of $2,000 while the debt was only $539.75. The statements of Cloney subsequent to the execution of the instrument were wholly inconsistent with the theory that he regarded himself to be the absolute owner of the property. The testimony shows a recognition of the existence of the indebtedness and also that the instrument was intended to be a security for that indebtedness. It has been decided that where a deed absolute in form is executed to secure an indebtedness and was so intended by both parties, the deed will be treated as a mortgage and their contemporaneous agreements evidencing such intention may be shown by parol proof. (*Dusenbery v. Bidwell*, 86 Kan. 666, 121 Pac. 1098, and cases cited.) It being shown that the rents and profits from the mortgaged property were sufficient to discharge the debt and other obligations incurred for its maintenance, the plaintiff was entitled to the relief sought.

As to the contention that this is an action based on fraud which must be brought within two years after the discovery of the fraud, and that plaintiff must be held to have discovered the fraud when Cloney placed a mortgage on the land, which was recorded in 1922, while the legal title of the land was in Cloney, it was held by him only in trust until the obligations against it had been paid. Until he renounced the trust and claimed ownership as against plaintiff, the statute did not begin to run. (*Hunter v. Coffman*, 74 Kan. 308, 86 Pac. 451; *Clark v. Shoesmith*, 91 Kan. 797, 139 Pac. 426.) While the defendant Cloney placed a mortgage on the property which was recorded in 1922, the plaintiff had no actual knowledge of it nor any notice that he claimed adverse ownership until 1923. . The rule of constructive discovery does not apply in cases of this kind. The fraud was not in the execution of the instrument, but it was in the subsequent repudiation of the agreement and trusteeship of Cloney. Until the plaintiff had actual notice of the fraud, the statute did not begin to run. It was not set in motion by the so-called constructive discovery. (*Duffitt v. Tuhan*, 28 Kan. 292; *Doyle v. Doyle*, 33 Kan. 721, 7 Pac. 615; *St. Clair v. Craig*, 77 Kan. 394, 94 Pac. 790, 101 Pac. 3.) The action was brought within two years from the time the fraud was actually discovered by the plaintiff.

Although confidential relations were pleaded by plaintiff, he was entitled to a recovery regardless of any confidential relation between him and Cloney, and the complaint as to the instruction defining such relations was not material, and we think that even if it had been material the definition could not be held to be erroneous. We find no error in any of the instructions of which complaint is made.

The judgment is affirmed.