No. 34,464

H. J. KLUSMIRE, DORA KLUSMIRE and CHARLES H. KLUSMIRE, *Appellants*, v. F. W. DIXON, ANJENETTE DIXON et al., *Appellees*.

(96 P. 2d 634)

Opinion filed December 9, 1939.

*A. Harry Crane, Ward D. Martin, George E. S. Crane,* all of Topeka, and *M. A. Bender,* of Holton, for the appellants.

*E. D. Woodburn, F. W. Hobbs, Albert M. Cole,* all of Holton, and *E. R. Sloan,* of Topeka, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: Plaintiffs, alleging they were the owners of certain real property and that defendants were their tenants, sued to recover rents claimed to be due. Defendants answered that the deed by which they had conveyed the property to plaintiffs and the lease contract containing an option for them to repurchase the property, on which plaintiffs predicated their suit, evidenced a debt and were intended as a mortgage. A trial by the court resulted in a judgment

for defendants, holding the instruments created the relation of mortgagor and mortgagee. Plaintiffs have appealed.

The facts disclosed by the record, so far as pertinent to the questions before us, may be summarized as follows: In 1901 defendants leased from the then owner, who apparently is now not a party to this action, a farm of 130 acres adjoining the city of Holton, in Jackson county. They moved on the farm and occupied it as tenants until 1909, at which time they bought it for $15,000, paying $2,000 in cash and giving a first mortgage for $10,000 and a second mortgage for $3,000 on the land. They then began to improve the premises and planted forty acres of it to orchard, nursery and small fruits, specializing in strawberries, and developed a large local and mail-order business. By 1914 the mortgages they had given on the property were coming due and the holders wanted payment. Plaintiffs, doing business as Klusmire Brothers, were engaged in the hardware business at Holton, and defendants were indebted to them on account about $2,000. The defendant, Mr. Dixon, went to the plaintiff, Henry Klusmire, and wanted plaintiffs to make him a loan on the place to take up his indebtedness. Plaintiffs already had purchased, or agreed to purchase, the $3,000 second mortgage. Mr. Klusmire told Mr. Dixon he wanted all of it, including the indebtedness on the account, to be secured by the land. They talked about the rate of interest. Mr. Dixon wanted to pay five percent; Mr. Klusmire said he would have to have six percent. Mr. Dixon agreed to it. Then Mr. Klusmire said "he would have to have a deed for it for security, under a contract which would be the same as a mortgage." Mr. Dixon preferred to give a mortgage. They talked about it several times; once at the bank, when Mr. Klusmire told him that he would have to have his security in the form of a deed; that he had talked with his attorney about it and that a deed with a contract under which defendants could purchase the property would have the same effect as a mortgage, and he referred him to his attorney, Mr. Guy L. Hursh, a capable, reputable lawyer then in the practice at Holton, who would prepare the papers. Mr. Dixon went to Mr. Hursh, who told him the same thing with respect to the effect of the instruments as Mr. Klusmire had told him. One or the other of them told him that if plaintiffs took a mortgage it would have to be recorded and they would have to pay taxes on it, while if it were handled by a deed with a contract to repurchase, the contract would not be taxable. At that time real estate mortgages were taxable

under our law at the same rate as other property. Our present mortgage registration law (G. S. 1935, 79-3101 *et seq.*) was not enacted until 1925. With some reluctance the defendants executed the instruments in the form desired by the plaintiffs and as recommended by their attorney and upon their assurance that the legal effect was the same as a mortgage. These instruments consisted of a general warranty deed from defendants to plaintiffs, and a lease, in a form common for farm leases, for one year, but containing in it a clause under which defendants could purchase the property, subject to the $10,000 first mortgage, for $6,400, which was the amount of the second mortgage on the land which plaintiffs had purchased and the indebtedness of defendants to plaintiffs. The rent to be paid was $1,109.22 and was figured at six percent on the total indebtedness, $16,400, and the taxes on the land. · It also contained a clause that if the rentals were paid it would be extended for another year. Three written renewals were made, the last one in 1924. The amount to be paid for repurchase varied, the last one being $16,000, and the annual rentals six percent of that, or $960. In the meantime plaintiffs had paid the $10,000 mortgage. The other renewals contained different sums. It is, however, conceded that the annual payments to be made, and spoken· of as rent, but intended as interest, always were computed at six percent upon the then existing indebtedness, which was stated in the instrument as the amount defendants were to pay in order to repurchase the property, and always in addition to those payments the defendants were to pay the taxes upon the property. Plaintiffs alleged that defendants held over, with their consent, under the 1924 lease, and were therefore tenants from year to year. This arrangement continued until sometime, perhaps in the fall (the specific date not shown) of 1938, when this action was brought. The sum then sued for was $911.13, and it was alleged this included a part of the payments due for 1937.

The evidence disclosed that these payments were made promptly up to and including the year 1932; that since that time they had not been so promptly made. Sometimes plaintiffs paid the taxes and defendants reimbursed them, and at one time there was an assignment of some rents from a filling station defendants had built on the premises. There was evidence that defendants made lasting and valuable improvements on the property. They constructed two large stone sheds in which to handle their nursery stock and fruits,

and about 1926 built an office building. They kept other buildings in repair. In 1924 they built a filling station on the property at a cost of $1,700, which they leased for a time for $600 a year, and later for $480. In 1931 they thought they had an opportunity to sell the filling station and ground for $6,000. Defendants' son, Leon Dixon, who had been working with his parents, talked to plaintiff Henry Klusmire about it. He testified:

"I asked Henry about selling, I said if we sell that and turn that $6,000 in on this mortgage, this $16,000, he said that would be all right and I said that would cut the interest down and be better for both of us. I wanted $1,000 out of it myself for building it up, he did not think so and I finally agreed the whole $6,000 go in if we sold it, he was willing to accept it."

For some reason this sale was not made. Defendants built a cement foundation—a low-water bridge—across the creek at a cost of $500. They cleared timber off some of the land and tiled the bottom land inclined to be wet, putting in nearly 300 rods of 3-inch tiling. This work took the time of ten to fifteen men for nearly a month. In all respects they used and improved the property as owners subject to a mortgage. The court found "that the instrument executed and delivered by the defendants F. W. Dixon and Anjenette Dixon to H. J. Klusmire and Charles H. Klusmire on the 22d day of September, 1914, and the instruments executed in connection therewith is and was at all times, by the parties, plaintiffs herein and F. W. Dixon and Anjenette Dixon, intended to be and by them at all times treated as a mortgage and not as a deed." The judgment appealed from was rendered in harmony with the above findings.

Appellants cite *Holuba v. Floersch*, 142 Kan. 601, 50 P. 2d 1004, holding that before a court should construe a deed to be a mortgage to secure a debt the record should disclose that a debt exists, and many of our earlier cases to the same effect. There is no controversy in this case over that principle of law. It is conceded to be well established.

It next is argued that "all, not just part of the parties" must consider the deed a mortgage in order to make it one, citing *Reeder v. Gorsuch*, 55 Kan. 553, 40 Pac. 897; *Root v. Wear*, 98 Kan. 234, 157 Pac. 1181. We shall not stop to consider whether this is stated in the most appropriate form. For the purpose of this case it may be considered as being well stated. In this connection it is pointed out that Henry Klusmire transacted the business with the Dixons

and that Charles Klusmire was not present, and he testified in substance that he considered the instrument a deed and not a mortgage. If by this contention appellants seek to divide their interest so as to treat the deed as though there were two deeds, one to Henry Klusmire and the other to Charles, it is sufficient to say the point never was raised in the trial court. Indeed, all the pleadings treat the interest of the plaintiffs as being a common one. Plaintiffs were partners, doing business as Klusmire Brothers. If in transacting this business Henry was not acting for both of them, and if Charles had no transaction with defendants, then he has no real interest in this lawsuit. Obviously the point is an afterthought and lacks merit.

Appellants next argue that the legal presumption is that deeds and other written instruments pertaining to land titles are what they purport to be on their face, and that to justify a court in holding that a deed, absolute on its face, was intended as a mortgage, proof to that effect must be clear and convincing, citing *Wiswell v. Simmons,* 77 Kan. 622, 625, 95 Pac. 407; *Hockett v. Earl,* 89 Kan. 733, 735, 133 Pac. 852; *Hoyt v. National Bank,* 115 Kan. 167, 222 Pac. 127, and other cases to the same effect. The rule is well recognized. Its application is for the trial court. In other words, the trial court, in a case of this character, must keep in mind that to support a claim such as defendants made in this case the evidence to establish it must be clear and convincing. This court assumes the trial court knew of this rule and applied it. (*Wooddell v. Allbrecht,* 80 Kan. 736, 104 Pac. 559.) Even where proof must be beyond a reasonable doubt, this court assumes the trial court knew and applied the proper rule as to quantum of proof. See *Kull v. Pearl,* 147 Kan. 329, 337, 76 P. 2d 790, and cases there cited.

Appellants argue that parol evidence to contradict the deed and lease were improperly admitted. The point is not well taken. Frequently parol evidence is the only type of evidence in such a case, and the courts always have regarded it as competent. (*Republic Mutual Fire Ins. Co. v. Johnson,* 128 Kan. 323, 326, 327, 278 Pac. 48; *Robinson-Patterson Coal Co. v. Morgan,* 130 Kan. 679, 288 Pac. 555.) Ordinarily the only controversy is whether it is sufficient to overcome the legal presumption that the instrument is what it purports to be on its face. See *Lindberg v. Pence View Farming Co.,* 140 Kan. 138, 33 P. 2d 1102, and authorities there cited.

It next is argued that the value of the land secured was not a determining feature. The evidence in this case was to the effect that

the land was of the reasonable value of $22,900 in 1914, at the time of the transaction in question. It may be conceded that this fact alone would not be controlling. It is simply one of the facts proper to be considered by the court and given such weight as it should receive in view of all of the other facts and circumstances shown by the evidence.

Appellants next argue that the evidence, being documentary, this court is not bound by the construction placed thereon by the trial court, citing *Hamilton v. Talbot,* 140 Kan. 20, 34 P. 2d 553; *Wollard v. Peterson,* 143 Kan. 566, 56 P. 2d 476; *DePee v. National Life & Accident Ins. Co.,* 144 Kan. 751, 62 P. 2d 923; *Goldburg v. Central Surety & Ins. Corp.,* 145 Kan. 412, 65 P. 2d 302. The difficulty of applying this rule here is that all of the evidence was not documentary; in fact, on the controverted question at issue, most of it was parol testimony, which it was the function of the trial court to weigh.

Lastly, it is argued that the findings and judgment of the trial court were not supported by clear, convincing and satisfactory proof. We have not attempted here to set out all of the evidence, but rather a summary of that which tended to support the judgment. We have considered all of the evidence disclosed by the abstract and all that counsel have said about it in their briefs. We have no hesitancy in saying that there was ample, competent evidence to support the finding and judgment of the court.

We find no error in the record. The judgment of the court below is affirmed.