No. 36,519

ORVAL C. JONES, *Appellee,* v. LAURA JONES, *Appellant.*

(167 P. 2d 634)

Opinion filed April 6, 1946.

*W. H. Carpenter,* of Marion, argued the cause, and *W. R. Carpenter,* of Marion, was on the briefs for the appellant.

*Homer V. Gooing,* of Wichita, argued the cause, and *Howard T. Fleeson, Wayne Coulson, Paul R. Kitch, Manford Holly* and *Dale M. Stucky,* all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: Speaking generally, it may be said that this action

was one by the plaintiff Orval C. Jones, to have a deed given by him to his mother, Laura Jones, declared to be a mortgage, and to bar Laura Jones and her husband, Charles W. Jones, from any interest in the real estate conveyed. Charles W. Jones died after a trial was had and before any judgment was rendered and the cause was dismissed as to him. The judgment of the trial court was in favor of the plaintiff and the defendant Laura Jones appeals to this court, specifying error which requires a review of the pleadings and matters subsequent thereto. Throughout the record there is some discrepancy in middle initials of parties referred to. To avoid apparent errors we shall use only Christian and surnames.

In his petition plaintiff alleged that he was the owner of an undivided one-fourth interest in a certain eighty acres of land in McPherson county; that in 1933 he borrowed from defendant Laura Jones the sum of $300. There was no written evidence of the debt which was to be repaid at his convenience without interest. As a part of the same transaction he executed and delivered to Laura Jones a deed conveying to her his interest in the real estate, it being the intention and understanding of both parties that the deed, though absolute in form, was in fact a mortgage to secure repayment of the debt. The deed was duly recorded. Thereafter Laura Jones and her husband, and other owners, executed an oil and gas lease, and as a result of development sometime in 1939 Laura Jones began to receive proceeds arising under the lease. In December, 1940, Laura Jones represented to plaintiff that she had received $360 as his interest in oil royalties from the land, and it was then agreed between them that she should pay him the $360 and he would execute his note to her for the $300 previously borrowed, and that she and her husband would reconvey his one-fourth interest to him, reserving a life estate in the real estate as security for the $300 debt which should be repaid out of one-half of his interest in the oil royalty proceeds and Laura Jones and her husband would account and pay to plaintiff his other one-half thereof, and that pursuant to the agreement Laura Jones paid him the $360 and he executed and delivered his note to her for $300, and Laura Jones and her husband executed their warranty deed conveying the undivided one-fourth interest in the real estate to Charles Curtis Jones and Alice Mary Jones, children of the plaintiff. The deed contained the following clause:

"Subject however to a life estate in said property which is hereby retained

and reserved by said grantors. By this is meant that during the life of either or both of said grantors that all income of rents and royalties or all income of any nature whatsoever from said premises is hereby retained by said grantors."

This deed was duly recorded. From time to time after execution of the above instruments Laura Jones made payments to plaintiff purporting to be his full share of the oil royalties or his share less sums applied on his note, a schedule of the payments being attached to the petition as an exhibit. After October, 1943, Laura Jones refused to pay him any part of his share of the oil royalties and he charged that she had not fully and truly accounted to him from the time the oil royalties commenced up to October, 1943. He further alleged that his share of the oil royalties received and retained by Laura Jones had long since fully paid his indebtedness to her; that at all times mentioned he had been the equitable owner of the interest in the land; that the defendants had no right or claim to the reserved interest other than a mortgage lien thereon and that the mortgage debt having been paid he was entitled to have the reservation canceled and to have the defendants barred from all right, title, interest and claim to the undivided one-fourth interest in the real estate. His prayer was he be declared the owner of the interest reserved and that the defendants be barred.

The defendants' demurrer to the petition having been overruled, they filed separate, but substantially like answers. Only hers will be reviewed.

In her answer Laura Jones denied all allegations of the petition except as admitted to be true, and for her second defense she alleged that she and defendant Charles Jones had been husband and wife for over forty years and that plaintiff was their son; that prior to 1933, the plaintiff owned the one-fourth interest in the real estate, and that it was not a valuable piece of land and his interest was not worth over $250; that in 1933, and during the depression, plaintiff came to their home in Marion county and endeavored to sell his interest for $300, and she agreed to purchase it; that he made her a deed which was duly recorded; that when the deed was made there was no agreement by or between plaintiff and his parents that the deed was to be considered as a mortgage to secure the loan to him of $300, or that they would reconvey to plaintiff upon payment of $300 to Laura Jones, and that after delivery of the deed plaintiff paid no attention to the land, paid no taxes, nor exercised any dominion or control over

the real estate, but that Laura Jones and her husband had possession with the consent of the other two owners thereof. For a third defense, Laura Jones alleged that six years after plaintiff's deed was made, she, her husband and two other owners executed an oil and gas lease and that plaintiff was aware thereof and that oil was produced in 1939, and that in the latter part of 1940 plaintiff talked with her concerning production and knew that money had been paid by the lessees in the lease and that she was receiving it; that in 1940 plaintiff took from her the sum of $360 knowing it was lease proceeds and therefore he was estopped from claiming the deed of 1933 was a mortgage and by his act in accepting the $360 he had ratified the deed as a conveyance. For a fourth defense, Laura Jones alleged that at no time did she execute or sign any agreement to reconvey the interest to plaintiff and he was barred by the statute of frauds. For a fifth defense, Laura Jones alleged that plaintiff did not claim there was any time fixed for reconveyance to him and by reason of his failure to fix a definite time in some manner the oral contract alleged in the petition was void. For a sixth defense, Laura Jones alleged her version of why the deed of December, 1940, was executed to the children of plaintiff, and the inclusion therein of the reservation quoted above, and that plaintiff placed the deed on record. She further denied any agreement or understanding that she or her husband would assign to plaintiff the rights so reserved, and she alleged that by reason of plaintiff's procuring the deed to his children, plaintiff had waived all right to claim the last deed was for the purpose of securing payment of $300, and plaintiff was estopped from making claim against her. For a seventh defense, Laura Jones alleged that she did not sign any written agreement between plaintiff and her husband or between plaintiff and herself, that she would at any time in the future assign or set over the interest reserved by herself and her husband in the deed to plaintiff's children, and that plaintiff's claim that such an agreement was made was barred by the statute of frauds. For her eighth defense, Laura Jones alleged that all moneys she may have turned over to the plaintiff after execution of the deeds mentioned were gifts to plaintiff from herself. She prayed for judgment in her favor.

At the trial, each of the defendants filed demurrers to plaintiff's evidence and these demurrers being overruled, they offered their evidence in defense. The trial court made findings of fact, including

matters not seriously in dispute, and conclusions of law. They are summarized as follows: Prior to October 16, 1920, one Frances Jones, mother of Laura Jones, owned the involved real estate. On that day she conveyed it to Laura Jones and to Laura's three children, including plaintiff. Frances Jones remained in possession of the land until her death in 1926, and thereafter, in accordance with a wish expressed by her mother, Laura Jones was permitted by her children to receive and retain the farm rents as if she had a life estate. The land conveyed was worth about $15 per acre for agricultural purposes and had a speculative value for oil purposes. Early in 1933 Orval Jones came to the home of his parents and borrowed $300 from his mother, to be repaid without interest at his convenience and promised that when he should be divorced from his wife in an action then pending he would send her a deed for his undivided one-quarter interest to be security for the loan. Later Orval Jones sent his mother a deed dated April 27, 1933, stating a consideration of $300, and naming Laura Jones as grantee. This deed was recorded May 23, 1933. When Orval Jones received the $300 from Laura Jones, it was agreed between them the transaction was a loan and the deed was to be security therefor. The burden of proving the deed was a mortgage was on Orval Jones. At all times material until early in 1941 relations between Orval Jones and Laura Jones were confidential and fiduciary. In 1939 Laura Jones and her husband, and their children Joseph and Frances, executed an oil and gas lease, and in that year or early in 1940 an oil well was completed as a commercial producer. On June 13, 1940, Laura Jones wrote plaintiff that, "I cashed our (yours and mine) check for 3 mo. oil it was the large sum of $80." On March 17, 1941, she wrote him that she was sending him a check for January and February oil. It is not necessary that we review the finding as to the amount of oil royalty proceeds received by Laura Jones during stated periods. The court further found that on December 19, 1940, Laura Jones gave Orval Jones her check for $360 stating it represented his share in the oil royalties she had received in 1940, and at the same time he gave her his note for $300. A copy of the note is included. It is a note dated December 19, 1940, due on or before January 1, 1942, with interest at eight percent. On the back was written: "This note is to be Paid from 50 percent of my income from the oil Royalty The Balance to be Paid me: Orval Jones." The note shows endorsements of the following amounts:

January-February $83.24, March $45.32 and April and May $98.85 (year is not shown). On March 20, 1941, Laura Jones wrote Orval a letter in which she referred to having sent him a check for one-half of his oil rent money and that the other half had been applied on his note. She also listed rents received for 1940 totaling $839.25 and for January and February of 1941 totaling $332.98, and enclosed a check for $83.24, a like amount being credited on the note as shown above. On April 15, 1941, Laura Jones wrote Orval Jones a letter in which she mentioned receipt of oil moneys, showing his share to be $90.65 and his check to be $45.32 and one-half for his note. The note bears an endorsement for that amount as shown above. On December 19, 1940, Orval Jones and Laura Jones had a conversation at her home and she agreed to make a deed to Orval's children of one-fourth interest in the real estate. They went to a bank where a deed was drawn and at the instance of Laura Jones the reservation quoted in full in reviewing the pleadings was inserted. After leaving the bank, Orval Jones objected but was assured by Laura Jones that she would continue to send him his interest in the royalties. He took the deed and had it recorded. Thereafter Orval Jones continued to complain about the reservation and on July 26, 1941, they executed the following memorandum in duplicate:

"Durham, Kansas
July 26, 1941

Contract

Between Orval Jones and Laura Jones

Orval Curtis Jones agrees on this day to refrain from all arguments, dissatisfaction, law suits or making any disturbance now or forever regarding his or his children's oil or Royalty checks the amount of each months check being one half of what Laura Jones receives. Orval C. Jones is to pay his share of any and all taxes, attorney fees and any just expense pertaining to the royalty. (signed) Orval Jones

I the undersigned, Laura Jones agree with the above contract and agree to send him his check each and every month

(signed) Laura Jones

I hereby witness the contract.

(signed) Orlie Frances Jones"

The court further found that through the years 1941 and 1942, Laura Jones sent Orval Jones approximately one-half of the oil royalty payments received by her, less the amounts applied on his note and less the $360 paid him in December, 1940. Orval Jones received no payments after October, 1943. One-half of the

payments received by Laura Jones for one-half of one-eighth of the oil royalty interest during the months from November, 1943, to April, 1944, amounts to much more than the balance due on Orval Jones' note after applying the credits endorsed on it by Laura Jones.

As a matter of law the court made seven conclusions: (1) The deed to Laura Jones was intended as security for Orval Jones' debt and was a mortgage and she acquired no title to the interest in the real estate but merely a lien. (2) Orval Jones had not divested himself of his equity of redemption. (3) Having no title to the one-fourth interest, Laura Jones and her husband could not and did not, by the reservation in the deed to Orval Jones' children, create for themselves any title to the reserved interest. (4) The effect of the reservation of a life estate was the retention by Laura Jones of her lien on the rents and royalties. (5) Orval Jones was not estopped by any conduct to assert his equity of redemption. (6) Orval Jones' debt to Laura Jones, secured by his deed to her, had been fully paid and neither she nor her husband had any interest in the land described in Orval Jones' deed to her. (7) Orval Jones was entitled to a decree that at the commencement of the action he was owner of the life estate excepted and reserved by Laura Jones and her husband in the deed to the children of Orval Jones, and barring Laura Jones and her husband and each of them from any right, title or claim thereto. Charles Jones died after these findings and conclusions were prepared but before they were filed.

In due time after the findings were filed, Laura Jones filed her motion to set aside certain findings of fact on the variously asserted grounds there was no evidence to support the finding, or it was immaterial, or it was not in harmony with the evidence. She also filed a motion to strike each conclusion of law, a motion for judgment notwithstanding the findings of fact and conclusions of law and a motion for a new trial. These several motions were presented to the trial court and each was denied. The plaintiff's motion for judgment in accordance with the findings of fact and conclusions of law was allowed and judgment was rendered accordingly, except that there was no judgment barring Charles Jones. In due time Laura Jones perfected her appeal to this court. She specifies error in ten particulars which are grouped for discussion in her brief and which will be noticed in the order presented.

It may here be remarked that appellant, in her brief and reply brief, makes an extended and detailed statement of her contentions, and an earnest argument in connection with each contention, some of which duplicate or overlap, and in support of which our attention is directed to many authorities. Time and space will not permit an extended discussion of each repeated contention nor a reference to the many authorities. A determination of some contentions will render unnecessary more than passing notice of others made.

Appellant's first and perhaps principal contention is that the trial court erred in overruling her demurrer to the petition, the allegations of which have been reviewed heretofore and need not be repeated. First, it is contended that Orval Jones, having made the deed to Laura Jones in 1933 and knowing that she and her husband, with other co-owners, had leased the real estate for oil and gas purposes, accepted the sum of $360 from Laura Jones and thereby estopped himself "from ever questioning the deed he now seeks to have set aside or any other deed the appellant Laura Jones and her husband may have made." The contention is further stated that one who knowingly receives benefits flowing from an instrument cannot question the instrument; that acceptance of the $360 was a ratification of the title in Laura Jones when the lease was made, and that the instrument of 1933 could not be a deed in one instance and a mortgage in another, and that Orval Jones is contending that to be the case—a thing which may not be done. The premise for the above argument ignores other allegations which are part and parcel of the situation disclosed by the pleadings, and the legal consequences arising therefrom. It needs no demonstration that when the deed of 1933 was delivered by Orval Jones to Laura Jones and made a matter of record, that to the world at large it was just what it purported to be notwithstanding any understanding or agreement between the parties to it, and when she executed the oil and gas lease, he was bound by it as to all persons who did not know of the agreement between him and his mother that the deed was intended to be security for a loan and not an absolute conveyance. Although appellant makes some argument that the agreement the conveyance was a mortgage is within the statute of frauds and therefore unenforceable, it has been held repeatedly in this state that such an agreement may be shown by parol testimony. See, e. g., *Moore v. Wade*, 8 Kan. 380; *Miller v.*

*Cloney,* 123 Kan. 538, 256 Pac. 159; *Robinson-Patterson Coal Co. v. Morgan,* 130 Kan. 679, 288 Pac. 555; *Carroll v. Naffziger,* 157 Kan. 482, 142 P. 2d 818; and cases cited. See, also, G. S. 1935, 67-302 and annotations. It follows the pleading sufficiently alleged the 1933 deed was a mortgage. With reference to the acceptance of the $360, the petition alleged that when the tender thereof was made, the entire agreement finally resulting was that a note would be given for the indebtedness, and that the security previously existing should be diminished by the giving of the deed of December, 1940, about which more will be said later and all as more fully shown in the review of the petition previously made. Under the circumstances there disclosed it may no more be said that Orval Jones was estopped to deny title, than that Laura Jones by acceptance of the note and the execution of the deed, was estopped to deny the deed was a mortgage. We think the situation disclosed by the pleadings did not show the inconsistency of position on the part of Orval Jones contended for by appellant.

Appellant urges as a stronger reason that Orval Jones was estopped, the fact that in his petition he alleges that in December, 1940, he "induced" Laura Jones and her husband to execute the deed to his children in which the grantors reserved a life estate, under the clause previously quoted, and that by so doing he recognized his parents as owners of the fee and not as holders of a lien. In an attack on the petition, it may hardly be said the allegations warrant any conclusion Orval Jones induced his mother to make the deed. The pleading is that his mother told him she had $360 as his share of oil royalty then received by her, and it was then agreed that he would give her a note for his existing debt to her of $300 and that she would execute the deed reconveying his interest, reserving a life interest as security, to be surrendered when his note was paid out of one-half of his share of the oil royalty. The allegations continue that the note was given and the new deed was made to the children of Orval Jones, with the reservation above mentioned, and that Laura Jones paid Orval Jones the $360. We recognize the rule contended for by appellant that where one having the right to accept or reject a transaction accepts, he is bound and cannot thereafter take an inconsistent position (21 C. J. 1206, 1210) and that one who claims an instrument in form a deed is in reality a mortgage, may lose his right of redemption by having his grantee convey to some third person (see 41 C. J. 371; Ann. Cas. 1913 B 407, 413; *Sauer v.*

*Fischer,* 247 Mich. 283, 225 N. W. 518, 65 A. L. R. 766, and annotation at 771 for expanded statements of the rule and applications made of it) but the allegations of the petition may not be segregated one from the other and separately considered. All must be considered in determining whether the pleader has set forth facts which preclude his recovery. We think the pleadings show that in December, 1940, Laura Jones, recognizing that the deed to her in 1933 was only security, advised Orval Jones that his share of oil royalties amounted to $360, and that an agreement was then made for a written evidence of the debt, for the acceptance by her of less security than she then had by execution by her and her husband of a deed to the children of a part of Orval Jones' interest, the unconveyed part being retained as security by Laura Jones and her husband, by means of the reservation of the life estate. That all of this was done and that Laura Jones paid Orval Jones the. $360 is alleged, and it is further alleged that consonant therewith Laura Jones later collected further oil royalties and from a part thereof made payments to Orval Jones and applications of payment on his note. Under all of the allegations the contentions with respect to inconsistent positions taken by Orval Jones, or that he lost his right to any equity of redemption may not be sustained. As disclosed by the pleadings, the acts of Orval Jones are no more inconsistent than those of Laura Jones.

And finally, in connection with her demurrer to the petition, Laura Jones contends the petition is defective in that there is no allegation that she or her husband ever signed any written memorandum in which they or either of them agreed to reconvey the involved interest in the real estate to Orval Jones, and that on the contrary an oral agreement was pleaded. Appellant directs our attention to that portion of the statute of frauds appearing as G. S. 1935, 33-106, and to a statement from *Riffel v. Dieter,* 159 Kan. 628, 638, 157 P. 2d 831, that if the original contract is required to be in writing in order to be enforceable, any substantial modification of it must likewise be in writing and signed by the party to be charged. This contention may be sustained only if it be held that the agreement the deed made in 1933 was a mortgage was within the statute of frauds and had to be in writing and signed by Laura Jones in order to be enforceable. Appellant contends that under the last cited case payments subsequent to the agreement of December, 1940, do not take the case out of the statute. We have previously directed

attention to our decisions holding that an instrument in form a deed may be shown to be only a mortgage, and the premises for appellant's contention does not exist. If the 1933 deed may be shown by parol to be a mortgage, and we hold it may be, and for present purposes hold it was a mortgage, then all that Laura Jones had was an interest defeasible by payment of the debt. The pleaded agreement of December, 1940, did not change the character of her interest, the only effect was as to the quantity of that interest, and for a lesser security than she previously had. If the only interest Laura Jones had in the real estate under the 1933 deed was security for a debt due her, she could not by the reservation in the 1940 deed vest herself with a freehold interest in the fee. Although to clear the title the husband of Laura Jones would have to join in a conveyance, all that would have been conveyed would be the right of Laura Jones as a mortgagee. The petition was not demurrable because of any failure to allege that either Laura Jones or Charles Jones had agreed in writing to reconvey to Orval Jones whenever he paid his debt to Laura Jones.

Appellant also contends the trial court erred in not sustaining her demurrer to plaintiff's evidence. The argument in support of this contention is in part that made in connection with the demurrer to the petition. A specific point urged is there was no evidence that when the 1940 deed was made Laura Jones agreed to convey to Orval Jones the reserved life estate when his note to her was paid. The legal question has been discussed earlier. If the 1933 deed was a mortgage, it was implicit in the agreement that when the debt secured was paid, the real estate would be reconveyed. The effect of the 1940 deed was to release a part of the security, and in a sense was a carrying out by Laura Jones of her duty to reconvey. However that may be, when it was proved that the reservation of a life estate by the 1940 deed was only security for the payment of Orval Jones' note to Laura Jones, it followed as a matter of law that upon payment by Orval Jones there must be reconveyance to him. As bearing on this phase of the matter see G. S. 1935, 67-309, and cases cited in the annotations thereto. It required no express agreement that when the debt was paid to the mortgagee the security for its payment was to be reconveyed to the former mortgagor. Failure to prove the particular matter just discussed did not render plaintiff's evidence demurrable. Another reason asserted why the demurrer should have been sustained is that Orval Jones testified the

reason he wanted Laura Jones to make the conveyance of December, 1940, to his children was because he did not want his wife to have any interest. It is contended this made the instrument fraudulent. It must be borne in mind that Orval Jones is not seeking to have this deed set aside. What he seeks is to have the reservation of title declared to be his property on the theory the title was reserved as security for debt and, the debt having been paid, to have its reconveyance to him. It may be observed that the evidence as abstracted shows there was considerable controversy between Laura Jones and Orval Jones shortly before the deed of December, 1940, was executed, first as to whether Laura Jones would make any reconveyance, and if so, to whom it should be made and the reservation by her. When the deed was finally drawn Orval Jones received and recorded it. The testimony showed that he accepted the deed on Laura Jones' assurance that she would continue to send him his interest in the royalties. Thereafter there were further discussions resulting in the memorandum agreement between them of July 26, 1941, hereinbefore quoted. That agreement was performed by Laura Jones until October, 1943. She was fully aware of the whole transaction. Appellant directs our attention to *Wyatt v. Collins,* 105 Kan. 182, 186, 180 Pac. 789, and the cases cited therein holding generally that the law is settled that where property is transferred with a fraudulent purpose neither the grantor nor his heirs can recover it. Just what the situation between Orval Jones and his wife may have been was not brought out in the evidence. In one place Orval Jones did testify that he wanted the deed made to his children because he did not want his wife to have any interest in it, and later that if he died he wanted his children to have it. The deed of December, 1940, was to settle a dispute between Laura Jones and Orval Jones, although it did not do so. Laura Jones made the deed, not Orval Jones, although he may be said to have participated in its making and subsequent recording. When all of the evidence is tested by demurrer, we think it may not be resolved into a conclusion that it was a fraudulent conveyance of the type that he may not recover in the action.

Appellant contends the trial court erred in overruling her objection to a so-called self-serving declaration contained in a letter written by Orval Jones. Without going into detail, Laura Jones was asked if she had received a letter dated May 19, 1941, a copy of which was shown her. She answered that to her recollection she did not.

Orval Jones was recalled as a witness and asked what the copy was and stated it was of a letter he had written his mother. After some objections and argument the trial court stated: "Well, admit it for what it is worth." The abstract does not disclose any motion to strike the evidence, nor is there any finding that indicates any weight whatever was placed on any statement in the letter. See our rule No. 53 as bearing on the matter. If there was an error in admission in evidence of the letter, it was not prejudicial.

Under another head, appellant contends the trial court erred in making certain findings of fact, which are criticized as not being findings of ultimate facts but mere recitals of evidence. This particular criticism is unwarranted. After directing attention to *Winston v. Burnell*, 44 Kan. 367, 24 Pac. 477, 21 Am. St. Rep. 289, where it was held that upon the issue that an instrument in form an absolute conveyance was intended as a mortgage, the fact must be proved by a clear preponderance of the evidence, appellant states she thinks this court not only has the right but it should examine the record to see whether the plaintiff sustained that burden. It is well established that the trial court, not this court, has the duty of determining whether the evidence is clear and convincing, and that on appeal it is of no consequence there was much contradictory evidence offered, which, if believed, would have compelled entirely different findings of fact and an entirely different judgment. (*Bruington v. Wagoner*, 100 Kan. 439, 164 Pac. 1057.) The rule that the evidence to prove an instrument in form a deed was intended as a mortgage must be clear and convincing, is a rule for the guidance of the trial court, and on appeal this court assumes it knew and applied that rule. (*Klusmire v. Dixon*, 150 Kan. 871, 96 P. 2d 634.) Neither have we overlooked appellant's argument that the proof shows the plaintiff testified falsely with reference to his conduct toward his mother and therefore he should be wholly disbelieved. Just what weight should have been given to Orval Jones' testimony was the duty of the trial court. Appellant condemns his testimony strongly, but the fact remains that as to much of it there is support not only by his mother and father, Laura Jones and her husband, but they admitted writing certain letters and produced certain writings which, to a very considerable extent, corroborated Orval Jones' version of what transpired. We have examined the record fully and without detailing the evidence, a good deal of which has been previously mentioned, we are of opinion that the findings of fact are amply supported by the evidence.

Appellant contends the trial court erred in each of its seven conclusions of law, and in support of her contentions as to the first and second findings directs our attention to the arguments made on the rulings on the demurrers to plaintiff's petition and his evidence. Further discussion of those arguments is unnecessary. It is contended the third conclusion is erroneous because the record shows that Orval Jones did not pay Laura Jones $300 at the time she executed and he accepted the deed to his children in 1940, and that he was estopped from questioning the latter deed. This matter has been sufficiently treated earlier herein. Conclusion number 4 is characterized as absurd and inconsistent with conclusion number 3. As we understand the contention, it is that the trial court concluded Laura Jones had title to convey to Orval Jones' children, but only as security for what was due from him to her. The argument overlooks the fact that if Orval Jones was entitled to reconveyance, he could, with assent of Laura Jones—and that was had—have reconveyance to his nominee instead of to himself. The fact the reconveyance did not cover his full interest did not alter the situation. The complaint as to conclusions 5 and 6 involves only matters which have been discussed, except that there is no evidence Orval Jones ever gave Laura Jones "a cent in any shape, manner or form." It must suffice to say the record amply shows that Laura Jones received and credited on the $300 note, the separate sums totaling $265.84 and that she had received other sums for which she did not account to him. Conclusion 7 is attacked as not supported by and as contrary to the evidence, and as inconsistent. These matters have been discussed before and we now content ourselves with saying the attack is not justified.

And finally, appellant contends the trial court erred in not sustaining her motion for judgment in her favor notwithstanding the findings of fact and conclusions of law and her motion for a new trial. Except as to the matter hereafter discussed, the argument is a restatement of what has been heretofore considered. The trial court did not err in its rulings on these two motions.

Appellant directs our attention to two parts of the judgment, one that "neither of the defendants has had any title . . . to said reserved and excepted interest since the commencement of this action" and the other that defendants are adjudged to pay the costs, and argues that since Charles Jones had died after trial and before judgment, no such judgments should have been rendered. As to the first phase, it may be noted that notwithstanding the statement

as to rights at the commencement of the action, only defendant Laura Jones was barred. There was no error. As to the second phase, Charles Jones was dead when the judgment for costs was rendered against him and it is a nullity.

The judgment of the trial court is affirmed in all its parts except as against Charles Jones for costs, and the cause remanded with instructions to set aside that part of the judgment.