No. 37,439

Maud Wyatt, *Appellee*, v. Harry C. Taylor, *Appellant*.

(201 P. 2d 647)

Opinion filed January 22, 1949.

*W. D. Jochems*, of Wichita, argued the cause, and *J. Wirth Sargeant, Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, S. C. Durbin, H. C. Castor, J. H. Fugate* and *J. Paul Jorgensen*, all of Wichita, were with him on the brief for the appellant.

*Homer V. Gooing*, of Wichita, argued the cause, and *Manford Holly, Howard T. Fleeson, Wayne Coulson, Paul R. Kitch, Dale M. Stucky*, and *Donald R. Newkirk*, all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

Price, J.: This is an appeal by the defendant below from a judgment setting aside and cancelling a written lease, executed by plaintiff and defendant, on the ground that plaintiff's signature thereto

was obtained by fraud and deception on the part of the defendant.

The facts, as disclosed by the pleadings and evidence, are substantially as follows:

Both parties are residents of Wichita. The plaintiff, Maud Wyatt, was the owner of several pieces of property, the renting of which she handled personally. In the summer of 1944 one of the properties, a ground-floor storeroom in a building owned by her, was vacant. The defendant Taylor was interested in leasing this storeroom in order to engage in the business of retailing children's wear, provided he could buy some fixtures then being sold by plaintiff. He bought these fixtures and the parties entered into a written lease dated August 7, 1944, the term of which expired January 7, 1946, at a monthly rental of $135. On the last-mentioned date the parties executed another lease at a monthly rental of $175. No expiration date was filled in but it is admitted by the parties that this lease was to run until January 7, 1947.

In January or February, 1947, plaintiff prepared an original and carbon copy of a further lease extending to January 7, 1949, at a monthly rental of $175. This lease was prepared by her on a printed form commonly used in Wichita. Plaintiff used blue carbon paper in making the copy. This original and copy were left by plaintiff at defendant's place of business in February or March, 1947. The evidence is conflicting but there appears to have been some discussion between the parties as to the duration of this lease which was to commence January 7, 1947. The plaintiff's version is that she wanted the lease terminable January 7, 1949, whereas defendant's version is that he wanted to remodel the store and thus wanted a lease for a term longer than until January, 1949, so that he would be justified in the expenditure of a considerable sum in remodeling the interior and fixtures. This lease will be referred to as "Plaintiff's Proposed Lease."

The matter ran along and in the summer of 1947 the defendant was able to get workmen and materials and started remodeling the interior of the store. About the last of July or the first part of August he called plaintiff on the telephone one evening and discussed the terms of the lease he wanted—namely, to include a primary term of three years from January 7, 1947, with an option to renew for an additional three years at an increased rent. Defendant testified that plaintiff agreed over the telephone to such proposal, whereupon he told her he would have a new form of lease pre-

pared, using the same printed form plaintiff had previously used. Plaintiff's version of this telephone conversation is that defendant wanted the new lease to run for three years with an increased rental during the third year but that she insisted on the lease running only until January, 1949, and that no agreement was reached.

It further appears that on that evening Judge Kline of the city court of Wichita, a brother-in-law of defendant, overheard his end of this telephone conversation, prepared an original and one copy of a lease on the same printed form as plaintiff's proposed lease in accordance with defendant's version of the agreement and left them at defendant's place of business the next morning. Black carbon paper was used in making this copy. This is the lease which was later executed by plaintiff and defendant and which is the subject of this action. This lease was for the period January 7, 1947, until January 7, 1950, at a monthly rate of $175, and provided that defendant have a renewal option for an additional term of three years at a monthly rental of $200. The filled-in portion was immediately above the lines for signature on which the parties later signed.

On the morning after this conversation plaintiff called defendant on the telephone and told him she would not be in that day but would come in later; further, that she would lease only on the terms set out in the lease she had prepared, heretofore referred to as "plaintiff's proposed lease." Defendant's version of this conversation is that he told her to leave the matter open until she came into the store.

A few days later, on August 5, 1947, plaintiff went into defendant's store. She observed that men were working on the ceiling, doing some painting, and making over tables and shelves. She told defendant she had come to sign the lease. The parties went into the office in the rear of the store and sat down at a desk. Defendant's version of what took place is that he asked her why she had changed her mind and that her reply was to the effect that she just didn't know but that she didn't believe she wanted to enter into that lease; that they talked about his remodeling the interior; that he called her attention to the fact that he had always been a good tenant; that he reached into his desk drawer, pulled out the leases and placed them in front of her; that nothing was said for a couple of minutes and finally plaintiff said, "Well, give me the pen;" that she signed the original and carbon, after which he signed; that she then folded her copy, placed it in her purse and left.

Plaintiff's version differs in that she testified defendant said nothing about the new forms prepared at his instance; that she did not read the lease before signing because she assumed she was signing the forms she had prepared.

Judge Kline testified as to the telephone conversation between plaintiff and defendant heretofore referred to; that defendant had told plaintiff about the improvements he wanted to make and that he wanted a longer lease; that he, Kline, prepared the forms of lease in question that night from the forms previously prepared by plaintiff and left them at defendant's store the next morning.

It further developed that after leaving defendant's store on August 5 plaintiff put her signed copy of the lease in her safety deposit box without reading it; that later she went by the store several times, noticed some rather extensive remodeling going on, got to wondering about it, and on August 15 got her copy out of her safety deposit box and read it for the first time. She went to defendant's store and protested, at which time an argument took place. She demanded the executed copy of the lease in defendant's possession, together with the original and copy of plaintiff's proposed lease. This demand was refused. Settlement negotiations between the parties and their attorneys failed, following which plaintiff filed this lawsuit to set aside and cancel the lease in question.

The case was tried by the court without a jury in December, 1947, and was continued for argument until March 26, 1948, at which time counsel for both sides argued the matter. The court rendered an oral decision from the bench in favor of the plaintiff and stated reasons for so ruling. Counsel for plaintiff then requested the court to make written findings, stating that he would prefer them to the extemporaneous remarks of the court at the time of rendering judgment. This was done and written findings were filed April 1st, together with one conclusion of law, the substance of which was that plaintiff's signature to the lease in controversy was obtained by fraud and deception on the part of the defendant; that there was no meeting of the minds of the parties; that plaintiff had at no time assented to the lease, and that it should be canceled, set aside and held for naught.

Defendant's motion for a new trial, motion to set aside findings of fact and conclusion of law, and motion for judgment were denied, whereupon he appealed to this court setting out eleven assignments of error.

At the outset we are confronted with a question the decision on which we consider disposes of this appeal. Appellant's first assignment of error is:

"1. The court erred in holding that the appellee [plaintiff below] did not have the Burden of Proof."

In rendering his oral decision and judgment, the trial judge said:

"Gentlemen, I have already studied the briefs on both sides and I have listened interestedly to your arguments on both sides and I must say that you have done a good job, largely, I think, because I admonished you when the case was submitted to me, due to testimony being so contradictory and lacking satisfactory corroboration on both sides, to a large extent, there was some correspondence and then there was the testimony of the colored girl but what the colored girl testified to was just merely what any one of you lawyers sitting here now, . . .

. . . . . . . . . . . . . . .

"Now it appears to me that Miss Wyatt, after all, doesn't have the burden in this matter because this is one of those instances where there is nothing but just these leases before us and each of them giving conflicting evidence and from it all I have come to the legal conclusion that there was no meeting of the minds, that is a legal requirement. . . ."

From the foregoing it is apparent that the court tried and decided this case on the premise that the plaintiff did not have the burden of proof notwithstanding the fact that her action was to cancel the lease in question on account of the alleged fraud and deception of the defendant.

Citation of authority is hardly necessary to illustrate the long-established rule in this state that one who asserts fraud has the burden of proving it by a preponderance of the evidence; that such evidence should be clear, convincing and satisfactory; and it does not devolve upon the party charged with committing the fraud to prove that the transaction was honest and bona fide. (*Long Bros. v. West & Co.*, 31 Kan. 298, 1 Pac. 545; *Bank v. Reid*, 86 Kan. 245, 120 Pac. 339, *Fritts v. Reidel*, 101 Kan. 68, 165 Pac. 671; *Wilson v. Security National Bank*, 138 Kan. 610, 27 P. 2d 247.)

Appellee concedes this to be the rule, but calls our attention to those authorities holding that it will be presumed the trial court applied the proper test in weighing the evidence and finding the facts (*Klusmire v. Dixon*, 150 Kan. 871, 96 P. 2d 634); that this court will not review the evidence to determine whether or not the lower court in arriving at its conclusions of fact applied the proper test as to preponderance of the evidence (*Jones v. Jones*, 161 Kan.

284, 167 P. 2d 634); that it becomes immaterial upon whom the burden of proof rests when all the evidence concerning the transaction inquired into is introduced (*Gas Co. v. Fletcher*, 81 Kan. 76, 105 Pac. 34); and that while remarks which indicate a reasoning of a trial court are frequently helpful on review, yet they are no part of the judgment and that when proper findings of fact, based upon the evidence have been made, it is ordinarily unimportant what course of judicial reasoning is announced by the trial court in arriving at its decision when the decision itself is correct (*Saylor v. Crooker*, 97 Kan. 624, 156 Pac. 737; *Shelley v. Sentinel Life Ins. Co.*, 146 Kan. 227, 69 P. 2d 737).

We agree with those authorities and concede that they state the rule correctly as applied to the facts and circumstances of the cases under discussion. But in the case at hand, we are not permitted to speculate or to indulge in a presumption that the trial court applied the proper test with reference to the burden of proof and the preponderance and quality of the evidence. The court, by its statements when rendering its decision and judgment, removed all doubt on the question when it said:

". . . Now it appears to me that Miss Wyatt, after all, doesn't have the burden in this matter because . . ."

We frankly concede that in the heated trial of a lawsuit, a trial judge many times will make statements which, standing alone, might lead to the conclusion that he was clearly in error on some material matter but which, construed in the light of the whole record, amount to nothing more than mere harmless "observations" and are certainly no basis for reversal by this court. We also approve the general rule to the effect that a judgment otherwise valid will not be set aside merely on the ground that the lower court, in arriving at it, adopted an erroneous line of reasoning. (*Shelley v. Sentinel Life Ins. Co.*, supra.) But that is not this case.

The premise of the trial court, with reference to this question, being clearly erroneous, it follows, therefore, that its reasoning from such premise is vitiated in its entirety and this court has no alternative than to grant a new trial. As a result of our holding it becomes unnecessary to take up and discuss appellant's other assignments of error.

The judgment of the trial court is reversed, with directions to grant a new trial.